IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRYSTAL AMAYA, BRAD CATES,
BRIAN MOORE, and KIM RONQUILLO,

        Plaintiffs,

v.                                     No. CV 14-00599 WJ/SMV

SAM BREGMAN, MICHAEL CORWIN,
JAMIE ESTRADA, ANISSA FORD,
JASON LOERA, and BRUCE WETHERBEE,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon the Motions to Dismiss filed by Defendants Michael Corwin, **(Doc. 30)**; Sam Bregman, **(Docs. 30, 31)**; Jamie Estrada, **(Docs. 38, 39)**; Bruce Wetherbee, **(Doc. 62)**; and Anissa Ford,[1] **(Docs. 66, 67)**, as well as all responsive briefing thereto. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motions are well taken in part and, therefore, are **GRANTED IN PART AND DENIED IN PART** as herein described.

### BACKGROUND

The Court accepts the following well-pleaded factual allegations as true for present purposes. In mid-2009, a supporter of Susana Martinez's gubernatorial campaign purchased the internet domain susana2010.com from a domain registrar and web hosting company, then

---

[1] Ford is identified in the First Amended Complaint and the case caption as Anissa Galassini-Ford. *See* **(Doc. 22)**, First Amended Complaint. There appears to be no dispute that Ford has been erroneously identified and that Anissa Ford is the proper Defendant. *See, e.g.*, **(Doc. 83)**, Response Brief, at 1. That said, because the Court is ultimately dismissing Ford from this action, there is no need to amend the caption and docket to reflect Ford's correct name.

donated the domain to the campaign. Plaintiffs Brian Moore and Kim Ronquillo were each assigned an email address under that domain, while Plaintiffs Crystal Amaya and Brad Cates at some point sent emails to individuals with email addresses at that domain.

As Martinez's campaign manager, Defendant Jamie Estrada was provided the credentials for managing the domain in question. However, Estrada lost his position with the campaign on or about December 2009. The following November, Martinez (hereinafter "the Governor") won the gubernatorial election. After that time, Plaintiffs continued to send emails to or from susana2010.com email addresses.

On July 18, 2011, the susana2010.com domain expired, and messages sent to addresses under that domain bounced back to the sender as undeliverable. When no one on the Governor's staff could find the credentials for the domain, persons affiliated with the campaign reached out to Estrada.

Estrada did not reply. Instead, he renewed the domain under an alias using a prepaid gift card with no identifying information. He then changed the settings for the domain so that all incoming messages to email addresses under the domain would be directed to an email address he controlled. For almost eleven months, Estrada intercepted hundreds of emails sent to addresses under the susana2010.com domain, leaving the senders and recipients unaware that such messages had been intercepted. Plaintiffs state that their "private and confidential e-mail communications" were among those intercepted.

Estrada decided to share the intercepted emails with the Governor's political opponents. He shared some or all of the intercepted emails with Defendant Jason Loera, a Democratic consultant working for the Grassroots New Mexico political committee. Loera, in turn, shared the emails with Defendant Sam Bregman, a New Mexico attorney, the founder of Grassroots

New Mexico and the chairman of the state Democratic Party, as well as Defendant Bruce Wetherbee, a consultant for Independent Source PAC ("ISPAC"). Either Estrada or Loera shared the emails with Defendant Anissa Ford, the Governor's former personal assistant, and either Loera or Bregman shared the emails with Defendant Michael Corwin, ISPAC's executive director. Corwin, in turn, disclosed Plaintiffs' emails to the state Attorney General's Office, the Governor's political opponents, and the media. Corwin, Bregman, and Wetherbee also disclosed Plaintiffs' emails to other unknown individuals. The timing for these exchanges is not specified.

At some point on or shortly before June 19, 2012, an email sent from the state's Cabinet Secretary for the Department of Education to the Governor's susana2010.com email address was published on the ISPAC website and by a Santa Fe newspaper. Although no other emails from that domain were published at the time, the Governor became concerned. The original purchaser of the susana2010.com domain then contacted the domain registrar, and that company canceled the domain account on June 19, 2012.

In September 2012, Bregman filed, as an exhibit to a lawsuit, another intercepted email from the Governor to her deputy chief of staff. Around this time, Corwin stated publicly that ISPAC obtained intercepted emails from a source who had purchased the susana2010.com domain at auction after the domain had expired. Still, no emails sent to or from Plaintiffs were publicly disseminated until December 18, 2012.

Estrada was indicted by a federal grand jury in late May 2013 on charges connected to his interception of the emails sent to or from the susana2010.com accounts. In June 2014, Estrada pleaded guilty to one count of interception of electronic communications and one count of making false statements. The Court sentenced Estrada on November 13, 2014.[2]

---

[2] The Court hereby takes judicial notice of all filings in the aforementioned criminal case, *United States v. Estrada*, 13-cr-01877-WJ. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citation

Plaintiffs initiated this action in June 2014 and filed the operative First Amended Complaint in November 2014. Count I alleges that Estrada intentionally intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(a). Count II alleges that all Defendants intentionally disclosed and/or used intercepted electronic communications in violation of 18 U.S.C. § 2511(1)(c)-(d), and Count III alleges that all Defendants conspired to intercept, access, disclose, or use electronic communications in violation of 18 U.S.C. § 2511. Count IV alleges that Estrada intentionally accessed electronic communications in violation of 18 U.S.C. § 2701(a). Although these claims all allege violations of criminal statutes, 18 U.S.C. § 2520(a) creates a civil remedy for certain violations of § 2511, while 18 U.S.C. § 2707(a) creates a civil remedy for certain violations of § 2701. By January 20, 2015, all Defendants except Loera had filed the instant motions to dismiss.[3]

## SUMMARY OF PENDING MOTIONS

Corwin's motion to dismiss, **(Doc. 30)**, raises four arguments—that Plaintiffs' claims against him are time-barred; that his actions as alleged in Count II are protected by the First Amendment; that Count III's conspiracy claim cannot be brought under § 2520(a); and that Plaintiffs fail to allege sufficient facts to state any claims against him. Wetherbee's motion, **(Doc. 62)**, is essentially a word-for-word copy of Corwin's motion.

Bregman filed two motions to dismiss. In the first, **(Doc. 31)**, Bregman essentially joins in Corwin's position that Count II does not state a claim against him and that Count III cannot

---

omitted); *see also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004) (citing 27A FED. PROC., L.ED. § 62:520 (2003)) (noting that court need not convert a motion to dismiss to a motion for summary judgment when considering facts subject to judicial notice).
[3] Loera also failed to timely file an answer to either the original complaint or the First Amended Complaint. Loera currently faces several federal criminal charges of possession of child pornography, *see United States v. Loera*, 13-cr-1876 JB, Doc. 25 (D.N.M. Jan. 9, 2014); Plaintiffs assert that communication with Loera has proven difficult due to a prohibition on sending or receiving electronic communications imposed as a condition of his pretrial release. *See* **(Doc. 95)**, Response to Order to Show Cause. From this point on, the term "Defendant(s)" is used in this order to refer to all Defendants except Loera.

4

stand at all. In the second, **(Doc. 34)**, Bregman joins in Corwin's argument that both of those claims are time-barred.

Estrada also filed two motions to dismiss. Estrada first contends that there is no legal or factual basis to Count III, largely adopting Corwin's argument to this effect. *See* **(Doc. 38)**. In his second motion, Estrada asserts that all of Plaintiffs' claims are time-barred. *See* **(Doc. 39)**.

Finally, Ford similarly filed two motions to dismiss. Her first motion, like some filed by the other Defendants, challenges the legal and factual basis for Count III. *See* **(Doc. 66)**. Ford also insists that Plaintiffs failed to state a claim against her in Count II. *See id.* Ford's second motion is limited to attacking the timeliness of Plaintiffs' complaint and essentially mirrors the other Defendants' arguments on this subject. **(Doc. 67)**.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

**DISCUSSION**

I.   **Challenges Brought by All Defendants**

Although their arguments are spread across eight motions, each Defendant contends that Count III's conspiracy claim is not viable and that all of Plaintiffs' claims are time-barred. The Court considers these positions before moving to the Defendants' individual positions.

A.   Viability of Conspiracy Claim

Defendants argue that Count III must be dismissed because neither §2511 (c)-(d) nor § 2520(a) provide for civil claims of secondary liability. Defendants' argument is grounded in the Tenth Circuit's recent decision in *Kirch v. Embarq Management Co.*, which found that a claim of aiding and abetting under § 2520(a) could not stand. *See* 702 F.3d 1245 (10th Cir. 2012). Defendants read this language to prevent any claims asserting secondary liability, including conspiracy claims, under § 2520(a). Plaintiffs cite other Tenth Circuit decisions for the proposition that a conspiracy claim may lie under that statute.

In *Kirch*, the Tenth Circuit analyzed the text of § 2520(a), which states, "[A]ny person whose wire, oral or electronic communication *is intercepted, disclosed, or intentionally used in violation of this chapter may* in a civil action *recover from the person or entity . . . which engaged in that violation*." 702 F.3d at 1246 (quoting 18 U.S.C. § 2520(a)). In concluding that this text did not assign civil liability to aiders or abettors, the court first noted that the statute only assigns civil liability to "the person or entity that 'intercepted, disclosed, or intentionally used' the communication." *Id.* Reviewing the statutory history, the court also observed that Congress eliminated any civil liability under § 2520(a) for those who "procure[d]" other persons to intercept or use communications; meanwhile, similar language in portions of § 2511 was left intact. *Id.* at 1247. In short, the Tenth Circuit concluded that liability under § 2520(a) could only

6

be assigned to those who themselves "intercepted, disclosed, or intentionally used" communications in violation of § 2511. *See id.* at 1246-47.

Defendants argue that *Kirch* stands for the proposition that no form of secondary liability, and in particular no conspiracy claims, can be brought under § 2520(a). Other courts, citing *Kirch*, are in agreement with this reading. *See Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 674-75 (W.D. Penn. 2014); *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 775-77 (C.D. Ill. 2013) (determining that conspiracy claims pursuant to § 2520(a) "would permit plaintiffs to circumvent Congress' intent to limit civil liability to those who have actually engaged in the prohibited practices"). Still other decisions reached the same or similar conclusions even before *Kirch* was decided. *See Doe v. GTE Corp.*, 347 F.3d 655, 658-59 (7th Cir. 2003) (determining that §§ 2511 and 2520 do not allow for secondary liability claims); *Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *6 n.6 (E.D. Mich. Sept. 20, 2010) (refusing to permit conspiracy claims under § 2520); *cf. Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (recognizing no civil cause of action for procurement under § 2520); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 27 (D.D.C. 2012) (refusing to read conspiracy claim and other secondary liability claims into 18 U.S.C. § 2707 for similar reasons).

Although these decision from outside the Tenth Circuit are not binding here, the Court finds them persuasive and adopts their analyses. The Court agrees with Defendants that the reasoning in *Kirch* and the weight of authorities cited above is just as applicable to conspiracy and other secondary liability claims under § 2520(a) as it is to aiding and abetting claims. "Normally federal courts refrain from creating secondary liability that is not specified by statute," *see Doe*, 347 F.3d at 658-59 (citation omitted), and Plaintiffs do not cite to any statutory

7

provision expressly authorizing a civil conspiracy claim pursuant to § 2520(a). Nor do they cite any decision that has affirmatively stated that the statute can support a conspiracy claim.

Plaintiffs do cite three decisions to support their argument that the Tenth Circuit recognizes a conspiracy claim under § 2520(a). However, each of these cases was authored prior to *Kirch*, and in none did the Tenth Circuit actually address a challenge to the viability of a § 2520(a) conspiracy claim on the merits.

In *Quigley v. Rosenthal*, the court found that the defendant had failed to challenge a jury instruction on conspiracy at the district court level, had therefore waived that challenge, and had not shown that it was plain error to recognize the claim. *See* 327 F.3d 1044, 1063-64 (10th Cir. 2003). Although the court cited two cases from other circuits "that at least suggest or imply that it is possible for a person or entity to violate the federal wiretap act by conspiring with others," neither of these decisions expressly considered that question. *See Bast v. Cohen, Dunn & Sinclair, P.C.*, 59 F.3d 492, 495 (4th Cir. 1995); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). While these authorities may have been enough to show that the plaintiff in *Quigley* failed to meet the "extraordinary, nearly insurmountable burden" of demonstrating plain error at the district court level, *see* 327 F.3d at 1063 (quotation omitted) they are neither binding nor persuasive as to the question before the Court.[4]

In an earlier decision, no party challenged the legal viability of a conspiracy claim, and the Tenth Circuit merely examined the factual support for the plaintiff's claim without considering whether such a claim could exist. *See Thompson v. Dulaney*, 970 F.2d 744, 748-50 (10th Cir. 1992). And in an unpublished, nonbinding decision, the court cited *Thompson* without elaboration to hold that there was sufficient factual support for such a claim against a defendant

---

[4] Indeed, the Fifth Circuit's decision in *Peavy* strongly suggests that *Forsyth* should not be read to permit a conspiracy claim pursuant to § 2520(a). *See* 221 F.3d at 168-69 (recognizing no civil cause of action for procurement under § 2520(a)).

8

in that particular case, again without considering the legal viability of such a claim. *See Zinna v. Cook*, 428 F. App'x 838, 839 (10th Cir. 2011) (unpublished).

By contrast, the Tenth Circuit's reasoning in *Kirch* applies much more directly to the question presently before the Court. That reasoning, combined with the weight of persuasive authority, leads to the inevitable conclusion that there can be no civil conspiracy claim brought pursuant to § 2520(a). The Court therefore holds that Count III fails to state a claim for which relief may be granted and dismisses that claim as to the moving Defendants.

B.  Statutes of Limitations

Defendants also argue that the remaining claims are all untimely under the relevant statutes of limitations. Section 2520(e) states that claims brought under § 2520(a), such as those in Counts I and II, "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." Similarly, Count IV's claim under § 2707(a) is only viable if it was "commenced [no] later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f).

"Under § 2520(e), the cause of action accrues when the claimant has a reasonable opportunity to discover the violation, not when she discovers the true identity of the violator or all of the violators." *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990). "In other words, the statute bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2003). Section 2707(f) operates in the same fashion with respect to claims under § 2707(a). *See, e.g.*, *Harris v. comScore, Inc.*, 292 F.R.D. 579, 588 (N.D. Ill. 2013).

Defendants argue that according to the facts alleged, Plaintiffs' claims must have accrued on June 19, 2012, since the domain registrar canceled the web domain no later than that date after determining that the domain had been "hijacked." Plaintiffs would have therefore had notice at that time that "would lead a reasonable person . . . to launch an investigation that would likely uncover the requisite facts" at that time. *See Sparshott*, 311 F.3d at 429. Since Plaintiffs' original complaint was filed on June 27, 2014,[5] Defendants argue that the complaint was just shy of the two-year statute of limitations.

By contrast, Plaintiffs correctly note that a determination of the accrual date of a claim under a discovery-based statute of limitations such as §§ 2520(e) and 2707(f) is generally fact dependent. *See Zinna v. Cook*, Civ. A. No. 06-cv-01733-CMA-CBS, 2009 WL 3158136, at *11 (D. Colo. Sept. 29, 2009) (discussing § 2520(e)); *see also City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979) ("Of course, the question of whether or not the plaintiff actually discovered, or should have discovered, [the basis for his claim under a state's discovery-based statute of limitations] is a question which should be left for the trier of fact or, in appropriate cases, summary judgment."). The Court concludes that further factual development is needed to determine the point by which Plaintiffs discovered, or should have discovered, that their communications had been inappropriately intercept, disclosed, used, and/or accessed. The Court therefore declines at this time to dismiss Plaintiffs' claims for failure to abide by the appropriate statutes of limitations.

---

[5] Defendants do not argue that Plaintiffs' First Amended Complaint does not relate back to the filing date for the original complaint.

## II. Individual Defendants' Challenges

In addition to their shared challenges to Plaintiffs' claims, each Defendant except for Estrada challenges the claims against him or her on an individualized basis. The Court considers these challenges in turn.

### A. Corwin and Wetherbee

Plaintiffs alleges that Corwin and Wetherbee, respectively the executive director of and a consultant for ISPAC, intentionally disclosed and/or used their email communications in violation of §2511(1)(c)-(d). Both Defendants argue that their activities were protected by the First Amendment and that Plaintiffs have otherwise failed to state a claim against them.[6]

#### i. First Amendment

Corwin and Wetherbee claim that their actions as alleged were protected by the First Amendment in two ways. First, they claim that the information they disclosed was of a public concern and that its disclosure cannot be punished. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001). Plaintiffs retort that they have pleaded that the emails at issue were "private and confidential" communications, not matters of public concern.

Defendants assert in their reply briefs that because Plaintiffs have not provided any details or a description of the general substance of their emails, they have not properly pleaded their allegations concerning the private nature of their emails and therefore cannot survive the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This argument misunderstands the reasoning of those cases, which simply hold that a complaint must "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning that the complaint "pleads factual content that allows

---

[6] Because Wetherbee's pro se motion to dismiss is for all intents and purposes a virtual word-for-word reproduction of Corwin's motion, the Court considers their arguments together.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citation omitted). A plaintiff generally does not fail to state a plausible claim for relief simply because he does not include sufficient allegations to refute a potential defense raised by a defendant. Rather, Count II against Corwin and Wetherbee only falls under *Twombly* and *Iqbal* if Plaintiffs failed to state a plausible claim that Corwin and Wetherbee intentionally disclosed or used, or intentionally endeavored to disclose or use, Plaintiffs' communications. *See* 18 U.S.C. § 2511(1)(c)-(d); 18 U.S.C. § 2520(a). Because the private or public nature of Plaintiffs' emails is immaterial to the plausibility of their claim against Defendants, the Court will not disregard Plaintiffs' allegation that the emails were private merely because this allegation is not supported by additional factual content.

Here, there are no allegations in the First Amended Complaint making it apparent from that document's face that emails that Corwin and Wetherbee disclosed and used were of public concern. Although this argument may be raised again on summary judgment after further factual development, the Court is not in a position to conclude that Count II must fail as a matter of law based on the allegations in the complaint.

Corwin also states that his right to petition the government under the First Amendment governs his disclosure of any emails to the Attorney General's Office, which he claims was the only time he may have disclosed any private emails. He also claims that he only shared these emails at the request of the Attorney General's Office.[7] However, as Plaintiffs point out, these allegations do not appear in their complaint. Rather, the First Amended Complaint alleges that Corwin disclosed the emails in question to other individuals in addition to the Attorney General's Office, and there is no allegation that Corwin made even the latter disclosures at anyone else's

---

[7] Although Wetherbee also raises these arguments, the First Amended Complaint does not allege that he disclosed any of the emails in question to the Attorney General's Office.

behest. In light of the allegations before the Court at this time, Corwin and Wetherbee's request to dismiss Count II against them on First Amendment grounds is denied.

                ii.        *Failure to State a Claim Generally*

Corwin and Wetherbee further argue that Plaintiffs' First Amended Complaint fails to set forth sufficient facts to support the claim against them. They correctly note that in addition to the general intent requirement found in all provisions of § 2511(1), subsections (c) and (d) in particular also require a showing that the defendant knew or had reason to know "that the information was obtained through the [illicit] interception of . . . communication[s]." *See* § 2511(1)(c)-(d). This means that in addition to proving intentional use or disclosure of emails, Plaintiffs also must prove that Corwin and Wetherbee knew "1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant[s] could, with presumed knowledge of the law, determine that the interception was prohibited." *Thompson*, 970 F.2d at 749. Corwin and Wetherbee claim that Plaintiffs have not pleaded sufficient facts to show that they knew or should have known that the emails they received had been intercepted via prohibited means.

With respect to Corwin and Wetherbee's knowledge of the prohibited interception of the emails, the cornerstone of Plaintiffs' claims against them rest on a select number of specific allegations. Although Plaintiffs' complaint acknowledges that Corwin stated in 2012 that he obtained the emails from a source who had purchased the domain at an auction, they note that no such auction occurred and insist that "no one would objectively believe" that the purchaser of a domain would obtain existing or future emails to addresses under that domain. Plaintiffs also state that "all Defendants had knowledge of the illegal interception of Plaintiffs' emails . . . while the interception was ongoing . . . and/or assisted with the interception and/or cooperated with the

13

interception and/or conspired together to continue the ongoing unlawful email interceptions." Finally, Plaintiffs allege that all Defendants knew or had reason to know that the emails were received through illegal interceptions "[b]ased on the communications between and among the various Defendants and the actions of the various Defendants . . . and the contents, format, and sheer volume of the emails intercepted."

Most of Plaintiffs' relevant allegations, without more, would not survive the standards set forth by the Supreme Court in *Twombly* and *Iqbal*. Plaintiffs' allegation that Corwin and Wetherbee "had knowledge of . . . assisted with . . . cooperated with . . . and/or conspired" to continue the illegal interception of emails is lacking in additional factual support, as are Plaintiffs' statements regarding Corwin and Wetherbee's communications with the remaining Defendants. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (stating that "'naked assertion[s]' devoid of 'further factual enhancement,'" cannot satisfy the pleading requirements of Rule 8). Similarly, the Court cannot accept as true Plaintiffs' allegation that Corwin would not "objectively believe" that the emails were acquired during a domain auction, as courts should not "accept as true a legal conclusion couched as a factual allegation." *See id.* (quoting *Twombly*, 550 U.S. at 555).

The only relevant allegation remaining is that Corwin and Wetherbee knew or had reason to know of the illegal nature of the interception "[b]ased on . . . the contents, format, and sheer volume of the emails intercepted." Although there are no allegations concerning the format of the emails, Plaintiffs claim in their First Amended Complaint that the contents of their emails were "private and confidential." Moreover, although Plaintiffs do not specify how many of *their* emails were intercepted, they do allege that "hundreds of stolen emails" were intercepted by Estrada and ultimately shared with the remaining Defendants, including Corwin and Wetherbee.

It is plausible that Corwin and Wetherbee, having received hundreds of emails from people who were ostensibly not senders or recipients of those emails, at least some of which contained private and confidential information, would have or should have known that the emails were intercepted in violation of § 2511(1)(a). Therefore, dismissal of the remaining claim against Corwin and Wetherbee pursuant to Rule 12(b)(6) is not appropriate.

### B.  Bregman

In one of his Motions to Dismiss, Bregman adopts by reference the arguments and authorities raised by Corwin (and Wetherbee) concerning Plaintiffs' purported failure to plead sufficient facts to show that he knew or should have known that the emails he received had been intercepted via prohibited means. Although Bregman does not develop this attack further, the implication is that Plaintiffs have failed to show that he knew or should have known that the emails he received had been intercepted via prohibited means. Plaintiffs, in turn, adopt by reference their response to Corwin's arguments, though in somewhat more detail.

Plaintiffs allege that Bregman, in addition to possibly sharing the emails in question with Corwin, also shared these emails with other unknown individuals. Further, the same allegation imputing knowledge to Corwin and Wetherbee "[b]ased on . . . the contents, format, and sheer volume of the emails intercepted" also imputes knowledge to Bregman on the same basis. Thus, the Court's conclusions regarding Plaintiff's claim in Count II against those Defendants is equally applicable to that claim as applied to Bregman. The Court therefore denies Bregman's motion to dismiss that claim against him.

### C.  Ford

Plaintiffs allege that Ford, like the other Defendants, should have known that the emails in question had been intercepted via prohibited means. Ford, like those other Defendants,

15

disputes this. However, Ford's motion to dismiss Count II differs from the motions filed by Corwin, Wetherbee, and Bregman in one crucial respect—she also argues that Plaintiffs have failed to allege she took *any* action that violated § 2511(1)(c)-(d).

To recap, 18 U.S.C. § 2511(1)(c) creates criminal liability for any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through" interception of that communication. Similarly, 18 U.S.C. § 2511(1)(d) creates criminal liability for any person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through" such interception. Meanwhile, 18 U.S.C. § 2520(a) allows anyone whose communications were "intercepted, disclosed, or intentionally used" in violation of those provisions to pursue civil relief from the responsible persons.

Several of Plaintiffs' allegations regarding Ford, standing alone, would not suffice to state a claim against her. For example, although Plaintiffs claim that Ford "intentionally disclosed and/or used Plaintiffs' stolen electronic communications," this "formulaic recitation of [an] element[] of a cause of action" does not itself satisfy the pleading standards set forth in Rule 8. *See Twombly*, 550 U.S. at 555. Similarly, their blanket assertion that their emails "were intentionally and willfully disclosed and used amongst the Defendants" cannot be deemed facially plausible as to Ford without "factual content that allows the court to draw the reasonable inference that [Ford] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Likewise, as noted earlier, Plaintiffs' insistence that "all Defendants had knowledge of . . . assisted . . . cooperated . . . and/or conspired together to" intercept,

disclose, and use their emails is not "plausible on its face" without factual content to support the allegation against Ford. *See Twombly*, 550 U.S. at 570.

In fact, the relevant factual content discussing Ford's activity in particular is limited. Plaintiffs merely assert that Ford received their private and confidential emails from either Estrada or Loera, that Ford maintained and controlled an email account that contained these emails, and that Ford knew the emails were illicitly intercepted based on their "contents, format, and sheer volume." Otherwise, the only other factual allegations mentioning Ford in Plaintiffs' First Amended Complaint are essentially "scene-setting" allegations—that Ford briefly worked for the Governor; that she knew Estrada and Loera and communicated with them on a regular basis; and that she responded to one of Estrada's Facebook posts prior to the interception of Plaintiffs' emails.

At the most, Plaintiffs allege that Ford received and possessed emails that she knew to have been intercepted. Mere receipt and possession of emails does not itself rise to the level of "interception," *see, e.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001), let alone disclosure. Further Plaintiffs do not describe any "use" to which Ford put the emails she received. Alhough Plaintiffs claim that Ford at one point maintained their intercepted messages in her email account, "some storage is essential to communication via email." *See id.* at 1269 (citation omitted). Such passive storage cannot fall under the more active connotations of the word "use." *Cf. Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999) (defining "use" as "to put into action or service" and concluding that passive eavesdropping on an intercepted communication does not constitute "use").

Without more, Plaintiffs have failed to state a claim against Ford under 18 U.S.C. §§ 2511(c)-(d) and 2520(a). The Court therefore grants Ford's motion to dismiss this remaining claim against her.

## CONCLUSION

For the sake of clarity, the Court notes that the impact of this Memorandum Opinion and Order is that Count III is dismissed with prejudice as to all Defendants[8] and that all claims against Ford are dismissed with prejudice. All other claims raised in Plaintiffs' First Amended Complaint, **(Doc. 22)**, remain intact.

Accordingly, for the foregoing reasons,

IT IS THEREFORE ORDERED that Corwin's Motion to Dismiss, **(Doc. 30)**, is GRANTED in that Count III as to Corwin is dismissed with prejudice, and DENIED in all other respects.

IT IS FURTHER ORDERED that Bregman's Motion to Dismiss Count Two and Count Three, **(Doc. 31)**, is GRANTED in that Count III as to Bregman is dismissed with prejudice, and DENIED in all other respects; and that Bregman's Motion to Dismiss First Amended Complaint Under Limitations Provision, **(Doc. 34)**, is DENIED.

IT IS FURTHER ORDERED that Estrada's Motion to Dismiss Count III, **(Doc. 38)**, is GRANTED in that Count III as to Estrada is dismissed with prejudice, and that Estrada's Motion to Dismiss Plaintiffs' First Amended Complaint as Time Barred, **(Doc. 39)**, is DENIED.

IT IS FURTHER ORDERED that Wetherbee's Motion to Dismiss, **(Doc. 62)** is GRANTED in that Count III as to Wetherbee is dismissed with prejudice, and DENIED in all other respects.

---

[8] While Loera has not yet moved to challenge any of the claims against him, there can be no "conspiracy of one," particularly where the Court has already found no legal basis for Plaintiffs to bring such a charge.

IT IS FURTHER ORDERED that Ford's Motion to Dismiss, **(Doc. 66)**, is GRANTED, that Ford's Motion to Dismiss Plaintiffs' First Amended Complaint Under Limitations Provision, **(Doc. 67)**, is DENIED, that all claims against Ford are dismissed with prejudice, and that Ford is dismissed as a party to this action.

IT IS FINALLY ORDERED that Count III as to Loera is dismissed with prejudice.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE