IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRYSTAL AMAYA, BRAD CATES,
BRIAN MOORE, and KIM RONQUILLO,

     Plaintiffs,

v.                                                                                    No. 14-cv-0599 WJ/SMV

SAM BREGMAN, MICHAEL CORWIN,
JAMIE ESTRADA, ANISSA GALASSINI-FORD,
JASON LOERA, and BRUCE WETHERBEE,

     Defendants.[1]

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT WETHERBEE'S MOTION TO AMEND

THIS MATTER is before the Court on Defendant Wetherbee's Motion to Join Additional Parties and Amend Pleadings by Filing of His First Counterclaims of Prima Facie Tort, Conspiracy, Civil RICO, and Conspiracy under Civil RICO [Doc. 181] ("Motion to Amend"), filed on October 7, 2015.  Plaintiffs responded on October 26, 2015.  [Doc. 207].  On November 10, 2015, proposed new party Darren White also filed a response.  [Doc. 222].  Defendant Wetherbee replied on December 7, 2015.  [Doc. 273].  Having considered the briefing, record, and relevant law and being otherwise fully advised in the premises, the Court finds that the Motion to Amend is not well-taken and, therefore, is DENIED.

## Background

This case is about stolen emails.  In mid-2009, a supporter of then gubernatorial candidate Susana Martinez purchased the internet domain name susana2010.com from a domain

---

[1] On March 23, 2015, the Court dismissed all claims against Defendant Anissa Galassini-Ford.  [Doc. 98]. Accordingly, Galassini-Ford is no longer a party to this action.  On April 14, 2015, the Clerk of Court entered default against Defendant Jason Loera.  [Doc. 110].

registrar and web hosting company and then donated the domain name to the Martinez campaign.  Plaintiffs Brian Moore and Kim Ronquillo were each assigned an email address under that domain name. Plaintiffs Crystal Amaya and Brad Cates at some point sent emails to individuals with email addresses at that domain.

As Susana Martinez's campaign manager, Defendant Jamie Estrada was provided the credentials for managing the domain.  However, Estrada was fired as campaign manager sometime in December 2009.  The following November, Susana Martinez won the election and became Governor of the State of New Mexico.  After the November election, Plaintiffs continued to send emails to or from the susana2010.com email addresses.

Between July 2011 and June 2012, Defendant Estrada intercepted hundreds of emails sent to addresses at the susana2010.com domain, leaving the senders and recipients unaware that the messages had been intercepted.  Defendant Estrada[2] shared the intercepted emails with the Governor's political opponents, including Defendant Jason Loera, a Democratic consultant working for the Grassroots New Mexico political committee.  Plaintiffs claim that Loera in turn provided some or all of the stolen emails to Defendant Wetherbee, who was affiliated with the group Independent Source Political Action Committee ("ISPAC").  Plaintiffs allege that Wetherbee then intentionally disclosed and/or used the emails even though he knew or should have known that they were stolen.  [Doc. 22] at 15–17.

Based on those factual allegations, one cause of action remains against Defendant Wetherbee.  It is brought pursuant to 18 U.S.C. § 2520(a), which provides for

---

[2] Eventually, Defendant Estrada was indicted by a federal grand jury in late May 2013 on charges connected to his interception of emails sent to or from the susana2010.com accounts.  In June 2014, Estrada pleaded guilty to one count of interception of electronic communications and one count of making false statements and was subsequently sentenced in accordance with his plea agreement.  [Doc. 100] in *United States v. Estrada*, No. 13-cr-1877-WJ (D.N.M. Dec. 12, 2014).

recovery of civil damages for anyone whose electronic communications have been "intercepted, disclosed, or intentionally used" in violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c)(d).[3] *See generally, Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (determining that liability under this section attaches only to those who themselves "intercepted, disclosed, or intentionally used" communications in violation of § 2511).

Defendant Wetherbee filed his Answer on April 20, 2015.  [Doc. 113].  He denies intercepting the emails or having known they were illegally intercepted.  *See id*. at 14, para. 9. While he admits disclosing at least some of the emails, he claims that such disclosures were not unlawful, for a variety of reasons.  *See id*. at 13–14.  Wetherbee now seeks to amend his Answer. [Doc. 181].  He seeks to bring counterclaims against the Plaintiffs, and to bring third-party claims against three other individuals who are not currently parties.  Specifically, he wishes to bring claims based on prima facie tort (against Plaintiffs and the third-parties), *see* [Doc. 181] at 25–28, and civil RICO claims against the third-party defendants, *see id*. at 25–32.

Wetherbee's proposed amended Answer/counterclaim/third-party complaint would shift the focus of the lawsuit from the stolen emails to alleged corruption in Governor Martinez's administration.  Essentially, Wetherbee argues that Plaintiffs (and the proposed new parties) have been in league with each other to abuse their governmental positions and connections to violate the law for their own benefit.  Wetherbee believes that Plaintiffs (and the proposed new parties) are pursuing this lawsuit against him in retaliation for his investigation into this alleged corruption.  While acknowledging that Plaintiffs' suit against him is "lawful," he believes that "the only purpose" of their lawsuit is to harm him and his reputation.  *Id.* at 2, 3.  He apparently

_____

[3] The Court previously dismissed a claim of conspiracy brought against Wetherbee and other Defendants. *See* [Doc. 98].

believes that Plaintiffs and the proposed new parties were aware early on that Defendant Estrada had acted alone in stealing the emails.  *See id.*  He believes Plaintiffs sued him anyway, despite knowing that (1) the statute of limitations had run, and that (2) his actions were protected by the First Amendment.  *See id.*  Based on these perceived flaws, Wetherbee surmises that the suit must really be about something else, i.e., revenge.

In the discussion below, the Court first addresses Wetherbee's motion to add counterclaims and third-party claims based on prima facie tort.  The Court finds that Wetherbee cannot state a claim for prima facie tort because the Plaintiffs had sufficient justification to bring the lawsuit against him.  Accordingly, amendment would be futile and thus, the Motion to Amend is denied.

Next, the Court addresses the proposed civil RICO claims against the third-party defendants.  The Court finds that Wetherbee cannot state a claim for civil RICO violations because (1) he lacks standing to sue under RICO, (2) his allegations fail to establish an "enterprise" under RICO, and (3) his allegations fail to establish "continuity" under RICO.

**Standard for Pro Se Pleadings**

Wetherbee is proceeding pro se.  Accordingly, the Court  reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).  However, pro se litigants' "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court may not assume that a pro se litigant can prove facts that have not been alleged, or that a defendant has violated laws in ways that the pro se litigant has not alleged.  *See Associated*

4

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

The Court may not act as an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

## Standard for Motions to Amend

Courts "should freely give leave [to amend pleadings] when justice so requires," FED. R.

CIV. P. 15(a)(2), but a motion to amend may be denied if amendment would be futile.  *See*

*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).  "A proposed amendment is futile if

the complaint, as amended, would be subject to dismissal."  *See id.*  A decision on a request to

amend is within the discretion of the Court.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## Analysis

### I.     Wetherbee's proposed claims based on prima facie tort.

Wetherbee seeks to bring counterclaims (against Plaintiffs) and third-party claims

(against three non-parties) for prima facie tort and conspiracy to commit prima facie tort.  *See*

[Doc. 181] at 25–28.  New Mexico recognized prima facie tort as a cause of action in *Schmitz v.*

*Smentowski*, 109 N.M. 386 (N.M. 1990).  The elements of the cause of action are:

1.  An intentional, lawful act by the defendant;

2.  An intent to injure the plaintiff;

3.  Injury to the plaintiff; and

4.  The absence of justification or insufficient justification for the defendant's acts.

*Id*. 394.  As mentioned, Wetherbee concedes that the filing of the lawsuit was lawful.  [Doc. 181]

at 25 ("At all times relevant hereto, Plaintiffs[] and third party defendants . . . were engaged in

intentional lawful acts with the intent to injure Wetherbee and others . . . .").  For purposes of this

discussion, and without expressly finding so, the Court will assume that Plaintiffs intended to

injure Wetherbee and that he was, in fact, injured.   That leaves the fourth element—absence of or insufficient justification for Plaintiffs' acts—and that element is fatal to Wetherbee's motion.

Plaintiffs correctly observe that the "intentional lawful act" of which Wetherbee complains, i.e., the filing of the lawsuit, aligns with the traditional tort of malicious-abuse-of-process.  [Doc. 207] at 13.  "The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages." *Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1313 (D.N.M. 2011).   The tort of malicious-abuse-of-process is "disfavored . . . [b]ecause of the potential chilling effect on the right of access to the courts."  *Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. 150, 156 (N.M. 2007) (internal quotation marks omitted).   The tort is construed narrowly to protect the right of access to the courts.  *See Durham v. Guest*, 145 N.M. 694, 701 (N.M. 2009).

In *Guest v. Berardinelli*, 145 N.M. 186, 197–98 (N.M. Ct. App. 2008), the Court of Appeals of New Mexico discussed the relationship between the tort of malicious-abuse-of-process and prima facie tort.  The court affirmed the district court's grant of summary judgment on the plaintiff's prima facie tort claim.  *See id* at 198.   The district court granted summary judgment on the plaintiff's prima facie tort claim because the claim relied on the same facts as her malicious-abuse-of-process claim and because she had not established a genuine issue of material fact on the malicious-abuse-of-process claim.  *See id*. at 197.   The Court of Appeals stated:

> We agree with the district court that the same set of facts required
> to prove lack of probable cause and misuse of process in the

[malicious-abuse-of-process] context are necessary to prove lack of justification in the prima facie tort context.  The undisputed facts in our discussion of [malicious-abuse-of-process] above support a prima facie showing that Defendants' actions were justified because Defendants had probable cause to file suit and did not engage in any overt misuse of process.

*Id*. at 198.  Thus, the issue here is whether Plaintiffs had probable cause to file their complaint against Wetherbee.  Clearly they did.

Probable cause in the malicious-abuse-of-process context means "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury."  *Fleetwood*, 142 N.M. at 154.  "The filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive." *DeVaney v. Thriftway Mktg. Corp*., 124 N.M. 512 (N.M. 1997),  *overruled on other grounds by Durham v. Guest*, 145 N.M. 694 (N.M. 2009).

The Court finds that the information available to Plaintiffs before filing their lawsuit supported a reasonable belief that that they had grounds to bring their claims against Wetherbee. As stated previously, there is no dispute that Estrada illegally intercepted the emails and gave them to Governor Martinez's political opponents.  *See* Plea Agreement of Jamie Estrada, [Doc. 79] at 6–7, *United States v. Estrada*, No. 13-cr-1877-WJ (D.N.M. Dec. 12, 2014).  Nor is there any dispute that Wetherbee obtained and distributed (or caused to be distributed) at least some of the emails:

> 7.      On June 26, 2012, Mr. Corwin [on behalf of Corwin and Wetherbee], sent information on emails related to the Downs to both the AG and the FBI.  On the same day, he published emails pertaining to the Downs on the ISPAC website, and on July 2, 2012, he sent copies of the Downs emails to the FBI and the AG.

> These are the emails believed to be at issue in this case.  They were
> provided to Mr. Corwin, ISPAC[,] and Mr. Wetherbee by a
> confidential source.

Bruce Wetherbee's Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 62] at 5.

Wetherbee claims that (1) he was unaware the emails were stolen, and (2) his distribution of the emails was not illegal because, for example, his actions were protected by the First Amendment.  *See* Mr. Wetherbee's Answer to Plaintiffs' First Amended Complaint [Doc. 113] at 13–14.  He may very well be right, but the fact remains that prior to filing their lawsuit against Wetherbee, Plaintiffs had knowledge that (1) the emails in question were illegally intercepted, and (2) Corwin and Wetherbee published them on the ISPAC website.  Thus, based on the evidence already of record, the Court finds that there was probable cause for Plaintiffs to bring their claims against Wetherbee.  That being the case, Wetherbee cannot maintain a counterclaim for prima facie tort.[4]  Accordingly, allowing Wetherbee to amend his Answer to bring claims based on prima facie tort would be futile.  The Motion to Amend, therefore, is hereby denied with respect to the proposed counterclaims against the Plaintiffs.

## II.    Wetherbee's proposed third-party claims based on RICO.

"To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).  In order to confer standing to sue under RICO, the RICO violation must have injured the plaintiff's business or property.  *See* 18 U.S.C. § 1964(c).  In the

---

[4] The Court's decision to deny Wetherbee's motion to bring claims based on prima facie tort should not be misconstrued as any comment on the strength of Wetherbee's defenses.  He may very well have a defense to the claims raised in the First Amended Complaint.  The Court finds only that Plaintiffs had probable cause to bring their claims against Wetherbee.

motion at bar, Defendant Wetherbee's proposed third-party complaint fails to state a claim under RICO, even if all of his factual allegations are taken as true.

Wetherbee fails to state a claim under RICO for at least three reasons. First, Wetherbee lacks standing to sue because he does not allege that he has been harmed "in his business or property." *See* 18 U.S.C. § 1964(c). Second, Wetherbee fails to assert facts that amount to an "enterprise" under RICO. Third, Wetherbee fails to allege sufficient facts to show "continuity" under RICO. Because the facts alleged by Wetherbee—even if true—do not state a claim under RICO, his claim is futile. Because the RICO claim is futile, so is his claim for conspiracy under RICO. *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."). Finally, the Court does not have jurisdiction to hear the remaining state law claims, and even if it did, it would decline to exercise it.[5] *See* 28 U.S.C. § 1367(a). For these reasons, the Motion to Amend is denied.

### A. Wetherbee lacks standing to sue under RICO.

Defendant Wetherbee does not allege that he has been injured in his business or property. *See* § 1964(c) (requiring such injury); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, *nor is mere commission of the predicate offenses*.") (emphasis added).

Under Tenth Circuit law, "a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962." *Deck v.*

---

[5] Without the RICO claim (or any other federal claim) asserted by Wetherbee, the Court would not have jurisdiction to hear his state-law claims unless they were so related to the Plaintiffs' wiretap claim (i.e., the claim over which the Court has original jurisdiction) as to form the same case or controversy. *See* 28 U.S.C. § 1367(a). Such is not the case here. Wetherbee's allegations of corruption, sleuthing, publication, and retaliation are too attenuated from Plaintiffs' claims for stolen emails to form part of the same case or controversy.

*Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003).  This limitation "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  Although "RICO is to be read broadly, . . . section 1964(c)'s limitation of RICO standing to persons injured in their business or property has a restrictive significance[.]"  *Id.* (internal citations and quotation marks omitted).  A cause of action under RICO is not ripe for adjudication until damages become clear and definite. *See Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1205 (D. Colo. 1998) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)).

With respect to the injury component of the standing inquiry, the United States Court of Appeals for the Third Circuit has noted that, "[i]n ordinary usage, 'injury to business or property' does not denote physical or emotional harm to a *person*.  Indeed the Supreme Court has declared that Congress' limitation of recovery to business or property injury 'retains restrictive significance.  It would for example exclude personal injuries suffered.'"  *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3d Cir. 1991) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, (1979)); To establish standing under § 1964(c), a plaintiff must proffer "proof of a concrete financial loss[.]"  *Maio*, 221 F.3d at 483.

In this case, Wetherbee makes no allegation that his business or property has been harmed.  Besides making vague, conclusory allegations that he has been injured, the only specific injury he alleges is to his reputation.  [Doc. 181] at 3.  The Court is unaware of any Tenth Circuit opinion directly addressing whether an injury to reputation can confer RICO standing.  However, in decisions which this Court finds to be persuasive, other courts in other circuits have held that reputational injuries cannot confer RICO standing.  *See Hamm v. Rhone-*

10

*Poulenc Rorer Pharm., Inc*., 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); *Padilla Rodriguez v. Llorens Quiñones*, 813 F. Supp. 924, 929 (D.P.R. 1993) ("[D]amages relating to injury to reputation are personal injuries not recoverable under RICO."); *see also City of Chicago Heights v. Lobue*, 914 F. Supp 279, 285 (N.D. Ill. 1996) (noting that damage to city's business reputation not injury to "business or property" compensable under § 1964(c)); *In re Teledyne Defense Contracting Derivative Litigation*, 849 F. Supp 1369, 1372 n.1 (C.D. Cal 1993) (noting that injuries to "business reputation" are not cognizable under RICO).

In situations where there is no controlling circuit law, federal courts may look to state law to determine whether a particular type of injury is a personal injury or one to "business or property" for purposes of RICO standing.  *See, e.g.*, *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) (recognizing that "some role does exist for state law" in determining whether an injury qualifies under RICO); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("[C]ourts may look to state law to determine, for RICO purposes, whether a property interest exists.").

The Court could find no New Mexico case directly on point.  However, the Court notes that New Mexico has one statute of limitations for injuries to person and reputation, NMSA 1978, § 37-1-8 (1976), and an entirely separate statute of limitations for injuries to property, NMSA 1978, § 37-1-4 (1953).  This suggests to the Court that New Mexico would consider a reputational injury to be a personal injury rather than one to property.  Wetherbee alleges no

injury to his business or property. *See* [Doc. 181] at 4−6. Therefore, his Motion to Amend is denied because he does not have standing to sue under RICO.

### B.  Wetherbee fails to allege an "enterprise" under RICO.

The second RICO element, the existence of an enterprise, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Despite the apparent breadth of this definition, to properly plead an enterprise, a plaintiff must allege three components: (1) that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." *United States v. Smith*, 413 F.3d 1253, 1266–67 (10th Cir. 2005). "In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is [the] normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997).

To illustrate, in *Kearney v. Dimanna*, 195 F. App'x 717, 721 (10th Cir. 2006), the Denver Police Department executed a no-knock warrant on the wrong house and the innocent resident inside was shot and killed. The decedent's family hired an attorney, and the attorney hired a former FBI agent, Mr. Kearney, to investigate. *Id.* at 718–19. Mr. Kearney did so and concluded that the police officers had wrongly shot and injured the resident and, then, murdered him to cover up their mistakes. *Id.* Mr. Kearney went to the authorities and the press with his theory. *Id.* at 719. Eventually, a Denver police organization hired an attorney and sued

Mr. Kearney (and a radio show host) for defamation.  *Id.*  After settling with the talk show host, the defamation plaintiffs dismissed their claims against Kearney, who had refused to settle.  *Id.* Thereafter, Kearney filed his own lawsuit, under RICO, alleging that the police organization, its lawyers, and others had sued him in retaliation and in an effort to silence him.  *Id.*

The Tenth Circuit Court of Appeals held that Kearney had failed to allege an enterprise for purposes of RICO.  *Id.* at 720–21.  The court held that the "enterprise" that Kearney alleged did not exist independent of the alleged pattern of racketeering activity.  *Id.*  Kearney claimed that the defendants associated in fact to obstruct justice by maliciously prosecuting him.  *Id.* The court disagreed, finding that there was no indication that the "association" had any existence or purpose outside of the alleged malicious prosecution and intimidation of Kearney to prevent him from continuing to expose the supposed illegal activity and cover-up pertaining to death of the innocent resident.  *Id.* (citing *e.g.*, *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004) ("[C]riminal actors who jointly engage in criminal conduct that amounts to a pattern of 'racketeering activity' do not automatically thereby constitute an association-in-fact RICO enterprise simply by virtue of having engaged in the joint conduct.  Something more must be found—something that distinguishes RICO enterprises from ad hoc one-time criminal ventures.")).  Simply put, Kearney's allegations failed to show that there would have been any association-in-fact among the defendants apart from the alleged malicious prosecution and scheme of intimidation against him.  *Kearney*, 195 F. App'x at 720–721.

In the instant matter, Defendant Wetherbee's assertion of a RICO enterprise fails for the same reason as in *Kearney*.  The alleged enterprise does not exist independent of the alleged pattern of racketeering activity.   Wetherbee's allegations—even if true—do not show an

ascertainable structure distinct, separate, and apart from the structure inherent in the alleged corruption and retaliation.  Wetherbee has failed to properly plead an enterprise.  Accordingly, his Motion to Amend is denied.

### C.   Wetherbee fails to allege "continuity" under RICO.

To serve as a basis for a RICO claim, the predicate acts identified in a complaint must provide a reasonable basis to conclude that the members of the alleged enterprise will continue to engage in criminal activity.  *See Jacksonville v. Bellsouth Telecomm.*, 372 F.3d 1250, 1265 (11th Cir. 2004) (threat of ongoing criminal activity is "crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address . . . .").  To establish this element, a plaintiff must either allege that the defendants engaged in a pattern of criminal activity over a substantial period of time, such that it would be reasonable to assume that such conduct would continue, or set forth specific facts that would support the conclusion that the defendants are likely to engage in future criminal activity.  *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239, 241 (1989); *see also Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (district court's dismissal of RICO claim upheld where the facts as alleged failed to show any threat of "future criminal conduct").  Besides alleging in a conclusory fashion that the proposed third-party defendants committed the alleged predicate acts "in a manner which they calculated and premeditated intentionally to threaten continuity," Wetherbee alleges no facts from which a reasonable assumption could be made that the proposed third-party defendants are likely to engage in future criminal behavior.  Accordingly, Wetherbee has failed to allege continuity which results in the denial of his Motion to Amend.

## Conclusion

Wetherbee cannot state a claim for prima facie tort against the Plaintiffs.  He lacks standing to bring a RICO claim against the proposed third-parties because his alleged injuries are not actionable under RICO.  Moreover, he fails to allege sufficient facts to show an "enterprise" or "continuity."  Even if his factual allegations are taken as true, the proposed third-party complaint would not state a claim under RICO.  Simply stated, Wetherbee's claims under RICO are futile.  Additionally, without an underlying RICO claim, his claims for conspiracy under RICO are also futile.  Finally, to the extent that Wetherbee's motion could be construed as proposing state-law claims not expressly addressed herein, the Court would not have jurisdiction to hear such claims, and even if it did, it would decline to exercise such jurisdiction.

Defendant Bruce Wetherbee's Motion to Join Additional Parties and Amend Pleadings by Filing of His First Counterclaims of Prima Facie Tort, Conspiracy, Civil RICO, and Conspiracy under Civil RICO [Doc. 181] is hereby **DENIED** for the reasons stated in this Memorandum Opinion and Order.

      **SO ORDERED**

 

_____

**UNITED STATES DISTRICT JUDGE**