IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRYSTAL AMAYA, BRAD CATES,
BRIAN MOORE, and KIM RONQUILLO,

      Plaintiffs,

v.                                      No. 14-cv-0599 WJ/SMV

SAM BREGMAN, MICHAEL CORWIN,
JAMIE ESTRADA, ANISSA GALASSINI-FORD,
JASON LOERA, and BRUCE WETHERBEE,

      Defendants.[1]

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION TO COMPEL DEFENDANT CORWIN AND
GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO COMPEL DEFENDANT WETHERBEE**

THIS MATTER is before the Court on Plaintiffs' Motion to Compel Defendant Corwin to Respond without Objection to Plaintiffs' First Set of Interrogatories and Requests for Production [Doc. 435], filed on April 15, 2016, and on Plaintiffs' Motion to Compel Defendant Wetherbee to Respond without Objection to Plaintiffs' First Set and Second Sets of Interrogatories, First and Second Sets of Requests for Production, and First Set of Requests for Admissions Propounded by Plaintiffs [Doc. 438], filed on April 15, 2016. Plaintiffs filed an Errata as to the Motion to Compel Corwin [Doc. 447] on April 25, 2016. Defendants Corwin and Wetherbee responded to their respective motions on April 25, 2016. [Docs. 449, 450]. They also joined in each other's responses on April 26, 2016. [Docs. 451, 452]. Plaintiffs replied on May 2, 2016. [Doc. 460, 462]. The Court heard oral argument on May 9, 2016. *See* [Doc. 476].

---

[1] On April 14, 2015, the Clerk of Court entered default against Defendant Jason Loera. [Doc. 110].

On review of the relevant briefing, argument, record, and law, and being otherwise fully advised in the premises, the Court will **GRANT** Plaintiffs' Motion to Compel Corwin and **GRANT IN PART and DENY IN PART** Plaintiffs' Motion to Compel Wetherbee.

### Background

This case is about stolen emails. In mid-2009, a supporter of Susana Martinez's Republican gubernatorial campaign purchased the internet domain name susana2010.com from a domain registrar and web hosting company, then donated the domain name to the campaign. Plaintiffs Brian Moore and Kim Ronquillo were each assigned an email address under that domain name. Plaintiffs Crystal Amaya and Brad Cates at some point sent emails to individuals with email addresses at that domain.

As Martinez's campaign manager, Defendant Jamie Estrada was provided the credentials for managing the domain. However, Estrada was fired sometime in December 2009. The following November, Martinez won the campaign and was elected Governor of New Mexico. But even after the election was over, Plaintiffs continued to send emails to or from the susana2010.com email addresses.

Between July 2011 and June 2012, Defendant Estrada intercepted hundreds of emails sent to or from addresses at the susana2010.com domain, leaving the senders and recipients unaware that the messages had been intercepted. Defendant Estrada[2] shared the intercepted emails with the Governor's political opponents, including Defendant Jason Loera, a Democratic consultant working for the Grassroots New Mexico political action committee. Plaintiffs claim

---

[2] Eventually, Defendant Estrada was indicted by a federal grand jury in late May 2013 on charges connected to his interception of emails sent to or from the susana2010.com accounts. In June 2014, Estrada pleaded guilty to one count of interception of electronic communications and one count of making false statements and was subsequently sentenced in accordance with his plea agreement. [Doc. 100] in *United States v. Estrada*, No. 13-cr-1877 WJ (D.N.M.).

that Loera in turn provided some or all of the stolen emails to the other Defendants in this case, including Defendants Corwin and Wetherbee, who were affiliated with the liberal group Independent Source Political Action Committee ("ISPAC").  Plaintiffs allege that Corwin and Wetherbee (among others) then intentionally disclosed and/or used the emails even though they knew or should have known that they were stolen.  [Doc. 22] at 15–17.

Based on those factual allegations, one cause of action remains against Defendants Corwin and Wetherbee.  It is brought pursuant to 18 U.S.C. § 2520(a), which provides for recovery of civil damages for anyone whose electronic communications have been "intercepted, disclosed, or intentionally used" in violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), (d).[3]  *See generally Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (Liability under this section attaches only to those who themselves "intercepted, disclosed, or intentionally used" communications in violation of § 2511.).

## Standard of Review

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  The Federal Rules of Evidence define relevance as having "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Courts have held that the scope of discovery under the federal rules is broad.  *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all

---

[3] The Court previously dismissed a claim of conspiracy brought against Corwin, Wetherbee, and other Defendants. *See* [Doc. 98].

potentially relevant information."). The federal discovery rules reflect the courts' and Congress's recognition that mutual knowledge of all the relevant facts gathered by all parties is essential to proper litigation. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007) (alteration in original) (internal quotation marks omitted).

A district court, however, is not "required to permit [a party] to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 2002 WL 1608456, 43 F. App'x 214, 217 (10th Cir. July 22, 2002) (unpublished); *see Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697(WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (unpublished) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (noting that courts do, and should, remain "concerned about fishing expeditions, discovery abuse[,] and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)). "[B]road discovery is not without limits[,] and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Elec.*

*Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998) (unpublished) (internal quotation marks omitted).   Courts have also "recognized that [t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery."   *Id.* (alteration in original) (internal quotation marks omitted).

The party claiming a privilege always bears the initial burden of establishing the factual predicate for the privilege.   *See, e.g., Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert a privilege must make a clear showing that it applies.").   This traditional allocation of burdens is not dispensed with simply because the claimed privilege implicates the First Amendment and the right of association.   *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488 (10th Cir. 2011).

### Analysis

Plaintiffs request that Defendants Corwin and Wetherbee identify everyone with whom they communicated about the @susana2010.com domain and/or emails and produce any and all documents that relate to those communications.[4]   Both Corwin and Wetherbee object to producing such information as it relates to their communications with members of the press, including each other.[5]   *See* [Docs. 450, 462].   Their position is that such information is privileged, and Plaintiffs should not be able to discover it by any means.  Defendants Corwin and

---

[4] Please see Appendices A and B, *infra*, for the complete text of the disputed discovery requests and Defendants' answers.

[5] Defendant Corwin argues that the other members of Independent Source Political Action Committee ("ISPAC"), Defendant Wetherbee and Ms. Laura Levin, are members of the press.  Plaintiffs dispute that Wetherbee, Levin, or Cowin for that matter, are members of the press.  For purposes of this Order, the Court presumes, *without finding*, that these individuals are, in fact, members of the press.

Wetherbee seem to argue that when they communicated with other members of the press about the @susana2010.com domain and/or emails, an impenetrable shroud of privilege enveloped the communications.   Additionally, Defendant Wetherbee objects to many of Plaintiffs' discovery requests because he says responding would reveal his confidential source(s).

The information sought by Plaintiffs is relevant and, under the circumstances here, is not privileged—except as to Wetherbee's confidential sources.   Corwin's and Wetherbee's objections will be overruled, except as to Wetherbee's objection to protect his confidential sources.   Corwin and Wetherbee must each supplement his discovery responses no later than **June 3, 2016**.   Further, because Corwin was not substantially justified in resisting the discovery, he will be required to pay Plaintiffs' reasonable expenses incurred in making the motion. Similarly, the vast majority of Wetherbee's objections were groundless, and therefore, he will be ordered to pay Plaintiffs' reasonable expenses incurred in making the motion.

### I.   The information sought is relevant.

Both Defendant Corwin and Defendant Wetherbee have vacillated on whether the information sought is relevant.   *Compare* [Doc. 462-2] at 3–6, and [Doc. 462-1] at 4–5, *and* [Doc. 449] at 7–8 (Corwin arguing that it is not relevant), *with* [Doc. 449] at 7 (Corwin conceding that it is relevant), *and compare* [Docs. 438-1 through 438-5] (Wetherbee arguing that it is not relevant), *with* Tr. of May 9, 2016 hearing at 91:6–92:9 (Wetherbee essentially conceding that at least some of it is relevant).   Plaintiffs' relevance arguments are persuasive. *See* Plaintiffs' Reply to Motion to Compel Corwin [Doc. 462] at 3–7; Plaintiffs' Reply to Motion to Compel Wetherbee [Doc. 460] at 2–7.   The Court finds that the information sought is relevant. The issues in this lawsuit are:

6

1. Who intercepted, disclosed, or used Plaintiffs' emails,[6] and why did they do so?

2. To what extent were Plaintiffs' emails disclosed or used?

3. Are Plaintiffs entitled to recover statutory or punitive damages, and from whom?

4. Are some or all of Plaintiffs' claims barred by the statute of limitations?

5. Did Wetherbee or Corwin know that the emails were stolen?

6. Is Wetherbee or Corwin immune from liability for disclosing Plaintiffs' emails because of the law enforcement exception to the Federal Wiretap Act, or because the Plaintiffs' emails contained "matters of public concern," such that  Wetherbee or Corwin was entitled to disclose them pursuant to the Supreme Court's holding in *Bartnicki v. Vopper*, 532 U.S. 514 (2001)?

[Doc. 400] at 6–7.  Accordingly, Defendants Corwin and Wetherbee's communications with others regarding the @susana2010.com domain and/or emails is relevant to Plaintiffs' claims and Defendants' defenses, especially Defendants Corwin and Wetherbee's defenses.  For example, this information may shed light on whether these (or other) Defendants believed that the emails were stolen and whether each believed that Plaintiffs' emails in particular were stolen or contained matters of public concern.  This bears on Plaintiffs' claims for statutory and punitive damages and on Defendants' defenses.  Thus, the objections based on relevance are overruled.

II. <u>The communications among Defendants Corwin and Wetherbee and other journalists, which evidence their "editorial process," are not privileged and must be disclosed.</u>

Defendants Corwin and Wetherbee claim that their communications with each other and with other journalists about the domain and/or the emails (and any materials evidencing those

---

[6] At oral argument, counsel for Defendant Corwin suggested something more narrow.  She repeated implied that the issue was Plaintiffs' emails' being made public.  Of course, Plaintiffs' claims are broader.  They sue under 18 U.S.C. § 2511 for interception, disclosure, and/or use of their emails.  [Doc. 22] at 17–18.  The issue is not just about the emails' being made public; it is about any interception, use, and/or disclosure, whether public or private.

communications) is privileged under the First Amendment because they are journalists.  In other words, they claim that evidence of their "editorial process" is privileged.  The Court disagrees.

Plaintiffs must be able to obtain discovery into these communications if they are to maintain their claims for statutory and punitive damages and be able to respond to Defendants' defenses.  Therefore, the Court finds that no privilege protects the editorial process.  The qualified newsperson's privilege, however, should protect Defendant Wetherbee's confidential sources.  Because Defendant Corwin is not protecting any source, the qualified newsperson's privilege does not apply to him.  Further, the qualified associational privilege is not applicable here because neither Corwin nor Wetherbee plausibly alleges—much less presents evidence to show—that permitting the disputed discovery risks chilling associations.  Finally, Defendants Corwin and Wetherbee have maintained unjustified positions in resisting this discovery. Therefore, they will be ordered to pay Plaintiffs' reasonable expenses.

## A. Editorial Process

Defendants Corwin and Wetherbee argue that their communications with each other and with anyone else they believe to be a journalist are privileged under the First Amendment. Corwin's Response [Doc. 449] at 5; Wetherbee's Response [Doc. 450] at 9.  This issue has been most commonly litigated in the context of defamation.  The seminal case is *Herbert v. Lando*, 441 U.S. 153, 169 (1979).

In *Herbert*, a retired Army officer sued journalists who had broadcast and published (allegedly untruthful) reports that he had fabricated a war-crimes whistleblowing story to attempt to explain his own relief from command.  *Id.* at 155–56.  Mr. Herbert sought discovery into, *inter alia*, communications among the journalist defendants and their conclusions based on those

communications.  *Id.* at 158 n.2.  That is, he sought discovery into the "editorial process" utilized by the journalist defendants in investigating and developing their (allegedly untruthful) reports. *Id.*

The journalists argued their editorial process should be shielded from discovery in order to avoid "an intolerable chilling effect on the editorial process and editorial decisionmaking."  *Id.* at 171.  They urged that "frank discussions among reporters and editors [would] be dampened and sound editorial judgment endangered if such exchanges, oral or written, [were] subject to inquiry by defamation plaintiffs."  *Id.* at 173.  The Court was not persuaded.

The Court dismissed the journalist defendants' argument about the potential chilling effect of allowing discovery into the editorial process.  *Id.* at 171–74.  The Court indicated that any chilling effect of allowing discovery would be "inhibition flow[ing] from fear of damages liability for publishing knowing or reckless falsehoods, [which would be] consistent with the First Amendment."  *Id.* at 171.  The Court rejected the argument that allowing discovery would suppress truthful information or cause undue self-censorship.  *Id.* at 171–74.

Additionally and importantly, the Court held that disallowing discovery into the editorial process would effectively foreclose any liability for defamation by journalists.  Defamation requires evidence of some version of malice, that is, knowingly publishing falsehoods about a plaintiff.  Without allowing defamation plaintiffs to obtain discovery to prove this essential element of their claim, liability for defamation would be completely barred.  *Id.* at 160.  Thus, the Court held that defamation plaintiffs should be allowed discovery to prove the elements of their claims and also to prove the requisite state of mind for punitive damages.  *See id.* at 161–63.

This case, of course, is not a defamation case, but it is persuasively similar.  In both situations, the journalist is the *defendant* accused of wrongdoing, not an undisputedly innocent third party.  In both situations, the plaintiff must have access to the editorial process in order to prove that the journalist defendant's conduct was intentional (or with some level of knowledge, depending on the precise defamation statute).  *See* 18 U.S.C. § 2511 (requiring intentional conduct).  In both situations, an adequate showing of knowing conduct could trigger punitive damages.[7]  In both situations, the best evidence is often available only through discovery into the editorial process.  *Herbert* and its progeny are compelling authorities here.

Neither Corwin nor Wetherbee has cited any authority recognizing a privilege for the editorial processes of journalists who are themselves defendants in civil cases.  Nor has the Court found any.  *See Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 172 (E.D.N.Y. 1988) ("There is a difference when the discovery is sought from a defendant newsperson versus when it is sought from a non-party newsperson.").

Rather (absent circumstances that have not been briefed and that are not present there), there is no First Amendment privilege for editorial process.  *Id.* at 169; *Broker's Choice of Amer., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1141 (10th Cir. 2014).  On that basis,

---

[7] There is a distinction that bears mentioning, although ultimately in the specific circumstances of this case, it is a distinction without a difference.  There is a "defense" to liability for violation of the Wiretap Act that does not apply to defamation.  The Supreme Court has carved out an escape from liability for violation of the Federal Wiretap Act, and Defendants Corwin and Wetherbee urge that they are entitled to it.  First, they allege that they themselves did nothing unlawful to obtain any of the emails.  Second, they urge that the only emails they disclosed were either matters of public concern or were disclosed at the request of law enforcement.  Thus, they claim that under the First Amendment and *Bartnicki v. Vopper*, they should not be held liable for their actions.  532 U.S. 514 (2011).  This *Bartnicki* "defense" does not appear to be applicable in defamation cases.  The point being that the strong desire courts have in preserving a defamation plaintiff's ability to seek relief may be slightly weakened in this, a Federal Wiretap Act case.  Nevertheless, the Court finds that *Bartnicki* does not control whether Plaintiffs in this case should be allowed the discovery they seek.  *Bartnicki* is not a First Amendment version of qualified immunity.  Although the Supreme Court has interpreted the First Amendment as saving certain whistleblowers from *liability*, there is no authority suggesting that it goes further and saves whistleblowers from *discovery*.

Defendants Corwin and Wetherbee's objections should be overruled, and the Plaintiffs' Motions to Compel should be granted (at least as to communications among Corwin, Wetherbee, and any other person they consider be a journalist).

### B.  Qualified Newsperson's Privilege

Defendants Corwin and Wetherbee object to producing material related to their communications with members of the press under the First Amendment and the "qualified newsperson's privilege."  Corwin's Response [Doc. 449] at 4 (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977)); Wetherbee's Response [Doc. 450] at 9 (citing *Silkwood*, 563 F.2d 433).

The First Amendment right to gather and disseminate news affords no absolute privilege against the revelation of news sources or the disclosure of confidential information.  *Branzburg v. Hayes*, 408 U.S. 665, 695 (1972).  In *Branzburg*, a newsperson wanted to avoid altogether a grand jury subpoena.  He reasoned that "if [newspersons are] forced to respond to subpoenas and identify their sources or disclose other confidences, informants will refuse or be reluctant to furnish newsworthy information in the future."  *Id.* at 682.  Ultimately, the Court held that newspersons enjoy no *absolute* privilege and ordered the reporter to testify.  *Id.* at 708–09.

Numerous courts, including the Tenth Circuit, have read *Branzburg* and its progeny as recognizing a *qualified* newsperson's privilege.  *Re/Max Int'l, Inc. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994) (collecting cases).  The cases acknowledge the competing public interests, namely the "public interest in non-disclosure of a journalist's confidential sources [and] the public and private interest in compelled testimony [in civil litigation].  Central to [this] analysis [is the] concern that the deterrent effect of such disclosure is

likely to have upon future 'undercover' investigative reporting threatens freedom of the press and the public's need to be informed."  *Von Bulow v. Von Bulow*, 811 F.2d 136, 142–43 (2d Cir. 1987) (internal quotation marks and ellipses omitted).

This qualified privilege is not limited to the obvious (i.e., revealing the identity of a confidential source[8]) but can extend to the newsperson's news-gathering materials.  *See The N.Y. Times Co. v. Gonzales*, 459 F.3d 160 198–99 (2d Cir. 2006) (where the newsperson's privilege protects disclosure in response to a subpoena, that privilege would also extend to telephone records in the possession of a third-party telephone provider, but in this case, the qualified privilege was overcome by the government's compelling interest); *Damiano v. Sony Music Entertainment, Inc.*, 168 F.R.D. 485, 495–96 (D.N.J. 1996) (The court held that reporters have a qualified privilege to protect their news-gathering materials.  Further, it found that the audio recording of an interview with musician Bob Dylan, taken by a non-party reporter, was protected by such privilege and not discoverable.  The court reasoned that compelling production of the recording would jeopardize possible future interviews to be recorded, and the plaintiff's need for the recording did not outweigh the need to preserve the reporter's trust.); *Loadholtz v. Fields*, 389 F. Supp. 1299, 1302–03 (M.D. Fla. 1975) (holding that the chilling effect, which the qualified newsperson's privilege attempts to prevent, applies not only to the identity of confidential sources but also to the newsperson's unpublished resource materials).

The Tenth Circuit Court of Appeals addressed the qualified newsperson's privilege where a district court had compelled a non-party documentary filmmaker to respond to a *subpoena*

---

[8] "Mr. Corwin's only source was Jason Loera; he had no other sources."  [Doc. 449] at 8.  So, Defendant Corwin is not claiming a newsperson's privilege to protect any source.  *Id.* However, Mr. Wetherbee insists that he is attempting to protect confidential sources (other than Loera, Corwin, and Levin).  Transcript of May 9, 2016 hearing at 95:2–15.

*duces tecum* (thus, to submit to examination and produce all of his documents and writings related to the investigation for his film).  *Silkwood*, 563 F.2d 433.  The court remanded the case so that the district court could weigh certain the competing interests at play.  *Id.* at 438.

The Tenth Circuit has identified a framework for such weighing.  "Among the factors that the Court must consider are **(1) the relevance of the information sought; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information sought**."  *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (emphasis added) (citing *Silkwood*, 563 F.2d at 438).  From these criteria, the district court must satisfy itself "that compulsory disclosure in the course of a 'fishing expedition' is ruled out."  *Silkwood*, 563 F.2d at 438.

At the outset, the Court notes that Defendants' briefing includes no allegation whatsoever—much less any evidence suggesting—that requiring them to respond to Plaintiffs' discovery requests would chill their (or anyone else's) First Amendment right to gather news.  This is, after all, the purpose of recognizing a qualified newsperson's privilege.  Because neither Defendant makes a showing (or a non-conclusory factual allegation) of a chill, the Court finds that they are not entitled to any protection that the qualified newsperson's privilege might otherwise afford.

Even if Corwin and/or Wetherbee had made such a showing, however, weighing the *Grandbouche* factors (which the Court addresses in order of analytical convenience) would not change the outcome.  First, as to the first factor, the information sought by Plaintiffs is highly relevant to their claims and to Defendant Corwin's defenses.  Corwin's and Wetherbee's communications with others regarding the @susana2010.com domain and/or emails may shed

light on whether they knew (or believed) that the emails were stolen or whether they addressed matters of public concern.  These beliefs bear on Plaintiffs' claims for statutory and punitive damages and on the law-enforcement and *Bartnicki* defenses.  The information sought goes to the heart of the case and weighs in favor of compelled disclosure.

Next, as to the third factor, Plaintiffs fail to show that they have attempted to obtain the information elsewhere, but they argue that to do so would be futile either because the information is available exclusively from Corwin and/or Wetherbee, or because the only other source of information would be other newspersons who will presumably assert their own newsperson's privilege.   Motion to Compel Corwin [Doc. 435] at 19; Motion to Compel Wetherbee [Doc. 438] at 18.  Defendant Corwin concedes Plaintiffs' points and expressly argues that the information should be absolutely privileged "whether from Mr. Corwin or from the reporters."   Corwin's Response [Doc. 449] at 7.   Wetherbee does not argue otherwise.  *See* Wetherbee's Response [Doc. 450].   This factor, therefore, weighs in favor of compelled disclosure because the information is not available other than from Defendants Corwin and Wetherbee.

As to the second factor, the information sought is necessary for just litigation of Plaintiffs' claims, and especially for Plaintiffs to respond to Defendants Corwin and Wetherbee's defenses.  This is so because of the critically relevant nature of the information, and because it cannot be obtained any other way.

Then, as to the fourth factor, the disputed information includes the identities of the newspersons with whom Defendants Corwin and Wetherbee communicated about the @susana2010.com domain and/or emails and the production of any and all documents that relate

to those communications.  *See* [Docs. 435, 438].  Corwin and Wetherbee, the proponents of the privilege, are themselves Defendants.  Although it is not dispositive, the fact that they are Defendants, who are accused of wrongdoing, rather than undisputedly innocent non-parties (like the journalists in *Branzburg* and *Silkwood*), is also relevant to the *Grandbouche* calculus.

Additionally, the Court has carefully considered other factors that are relevant in this particular case.  For example, on the one hand, the violations alleged by Plaintiffs are serious infringements on their privacy.  On the other hand, they seek only statutory damages; actual damages are not in play.  Finally, Defendant Corwin acknowledges that he is not attempting to protect any confidential source, and he gives no other specific reason why he needs to keep the information private.  That is, he utterly fails to explain how requiring him to produce the information would chill the freedom of the press.  Accordingly, Corwin is not entitled to the qualified newsperson's privilege.

However, Defendant Wetherbee maintains that he continues to protect confidential sources of government corruption.  [Doc. 450] at 5.  Under the narrow, complicated, and unusual circumstances of this case, on balance, Wetherbee is entitled to a limited qualified newsperson's privilege but only to protect his confidential sources.[9]  The Court must be explicit with the parties on these points: (1) Wetherbee is not entitled to protect as a confidential source anyone who has already been exposed, namely his fellow Defendants in this case (including Anissa Ford

---

[9] The Court finds that for the narrow and specific purpose of resolving this discovery dispute, Mr. Wetherbee is a reporter.  Plaintiffs are adamant that Wetherbee was acting as a "political opponent of the Martinez administration," when he disclosed the emails and therefore, he could not have been acting as a journalist.  [Doc. 438] at 14–15; Transcript of May 9, 2016 hearing at 81:12–82:3.  The Court is not persuaded that the two are mutually exclusive.  Is Rachel Maddow not a journalist?  Is Sean Hannity not a journalist?  Besides, for the particular discovery purpose at bar today, and for no other purpose, the Court finds that Wetherbee was acting as journalist such that he is entitled to the qualified newsperson's privilege to protect his remaining confidential sources.  *Von Bulow*, 811 F.2d at 143 ("[T]he critical question in determining if a person falls within the class of persons protected by the journalist's privilege is whether the person, at the inception of the investigatory process, had the intent to disseminate to the public the information obtained through the investigation.").

and Jason Loera), nor may he protect as a confidential source Laura Levin.  (2) Further, on quite
lengthy and careful consideration, this privilege does not extend to Wetherbee's communications
with other reporters (including Corwin and Levin).  Finally, (3) as to his remaining confidential
sources, Defendant Wetherbee must complete a proper and specific privilege log that complies
with the requirements set forth in *United States. v. Community Health Systems*, No. 05-cv-0279
WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5.

### C.  Qualified Associational Privilege

Defendants Corwin and Wetherbee also object to producing material related to their
communications with each other and other members of the press because they argue that such
information is protected by the First Amendment under the "qualified associational privilege."[10]
Corwin's Response [Doc. 449] at 8–9; Wetherbee's Response [Doc. 450] at 9.   As Corwin
explains, in relevant part:

> Requiring Mr. Corwin to identify the journalists and media representatives who
> he discussed the @susana2010.com emails with, and requiring him to disclose his
> communications with them, will have a chilling effect on the First Amendment
> right to associate with members of the press for the purpose of engaging in free
> speech.  *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2009)
> (citing *Buckley v. Valeo*, 424 U.S. 1, 15 (1976)).   Freedom to associate with
> others, such as the members of Independent Source PAC, for the advancement of
> common political beliefs and ideas is protected by the First and the Fourteenth
> Amendments.   *Id.*   Compelling Mr. Corwin to disclose the details of his
> association with members of his media group and with other reporters and
> journalists will have a chilling effect on, and will infringe upon, *his* exercise of
> fundamental First Amendment rights. *See [i]d.* at 1159–60.
>
> This is especially true considering that Mr. Corwin's communications with third
> party journalists was for the purpose of advancing political speech about the
> Martinez administration and [had] nothing to do with Plaintiffs or their emails.
> Plaintiffs' efforts to force Mr. Corwin to turn over his first-amendment protected

---

[10] Mr. Corwin's objection applies only to his communications with "media representatives and journalists;" he
represents that he has fully responded to the discovery requests as they apply to everyone else.  [Doc. 449] at 8.

> right to associate with members of the press, including those members of the press
> who he worked closely with, is improper and should be denied.

*Id.* at 8–9 (emphasis added).  Defendant Corwin argues that the "information is privileged whether from Mr. Corwin or from the reporters."  *Id.* at 7.  He argues the associational privilege is the "flipside" of the newsperson's privilege.  *Id.*

As an initial matter, Defendant Corwin has offered zero authority for his position that there is any "flipside" of the newsperson's privilege.  The Supreme Court has suggested otherwise.  *See Branzburg v. Hayes*, 408 U.S. 665, 695 (U.S. 1972) ("We note first that the privilege claimed is that of the reporter, not the informant, and that if the authorities independently identify the informant, neither his own reluctance to testify nor the objection of the newsman would shield him from grand jury inquiry, whatever the impact on the flow of news or on his future usefulness as a secret source of information.").

Returning to the associational privilege, however, the Supreme Court has long "acknowledged the importance of freedom of association in guaranteeing the right of people to make their voices heard on public issues."  *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 295 (1981).  Indeed, the right of association guaranteed by the First Amendment is premised in part on the notion that some ideas will only be expressed through collective efforts.  *See id.* at 294 ("[B]y collective effort individuals can make their views known, when, individually, their voices would be faint or lost.").  Moreover, some collective efforts to express ideas will only be undertaken if they can be undertaken in private.  *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.").  Therefore, the Supreme Court has recognized a privilege, grounded in the

17

First Amendment right of association, not to disclose certain associational information when disclosure may impede future collective expression.  *Id*. ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute a[n] effective . . . restraint on freedom of association.").  In other words, the First Amendment "associational" privilege generally guarantees the right to maintain private associations when, without that privacy, there is a chance that the association would be difficult or impossible and, consequently, that there would be no expression of the ideas that association helps to foster.

The seminal case addressing the First Amendment associational privilege is the Supreme Court's decision in *NAACP v. Alabama*.  There, the state of Alabama brought suit in state court to enjoin the NAACP from doing any business in the state based on its alleged noncompliance with the state's foreign corporation qualification statute.  *Id*. at 451.  To support its claim that the NAACP was conducting intrastate business in Alabama, the state moved for—and the state court ordered—the production of the NAACP's membership lists.  *Id*. at 453–54.  The NAACP did not comply with the order and was held in contempt.  *Id*. at 454.  The United States Supreme Court reversed the contempt judgment.  *Id*. at 467.  The Court first acknowledged that the "compelled disclosure of affiliation with groups engaged in advocacy may constitute a[n] effective . . . restraint on freedom of association" because of "the vital relationship between freedom to associate and privacy in one's associations."  *Id*. at 462.  The Court then recognized that the NAACP had made "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members . . . exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility."  *Id*.

Accordingly, the Court concluded that, under the circumstances, compelled disclosure would "chill" or "affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate" by "induc[ing] members to withdraw . . . and dissuad[ing] others from joining . . . because of fear of exposure of their beliefs shown through their associations and of the consequences of exposure." *Id*. at 462–63.  The Court did not find a compelling state interest that would justify the intrusion on the right.  *Id*. at 466; *see also Gibson v. Fla. Legis. Investigation Comm*., 372 U.S. 539, 539– 43 (1963) (During its investigation into criminal activity and communism, the Florida state legislature sought by subpoena to obtain the entire membership list of the Miami branch of the NAACP, which the records custodian disobeyed, was then held in contempt, and sentenced to imprisonment by state court.).

The Supreme Court has not limited the associational privilege to membership lists.  In *De Gregory v. Atty. Gen. of New Hampshire*, 383 U.S. 825 (1966), for example, the Supreme Court upheld the right of a private individual to refuse to answer questions from New Hampshire's attorney general regarding the individual's affiliation with communist groups. In that case, the attorney general was investigating—pursuant to his authority under a state statute—the individual's interest in the overthrow of the United States government or in other subversive acts.  *See Maynard v. De Gregory*, 106 N.H. 262, 209 A.2d 712, 713–14 (N.H. 1965). The individual refused to answer the questions and was held in contempt in state court.  *See id*. at 714–15.  The Supreme Court reversed.  *See* 383 U.S. at 830.  It reasoned that *governmental* exposure of unpopular political views and associations is objectionable and damaging, and that it

is indefensible under the First Amendment absent an overriding and compelling state interest, which had not been demonstrated under the circumstances in that case.  *See id*. at 829–30.

The Supreme Court has recognized that the associational privilege is not without limits. The Court faced a similar assertion of First Amendment associational rights *in Buckley v. Valeo*, 424 U.S. 1 (1976).  Candidates for federal office and political groups challenged provisions of the Federal Election Campaign Act of 1974 that established, among other things, reporting requirements on federal campaign contributions.  424 U.S. at 6–7.  The Court recognized that certain reporting requirements impinged on the freedom of association under the First Amendment but ultimately determined that the governmental interest justified the impingement. *See id*. at 64–84.

Although these cases address the limits of the *government's* reach in compelling disclosure of associations, the Tenth Circuit has expressly held that the associational privilege applies to discovery orders in litigation involving only private parties.  *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("[T]he magistrate's order compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny.").

The Tenth Circuit examined the associational privilege in a case involving only private parties in *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470 (10th Cir. 2011). There, the plaintiffs had alleged that the defendant motor-fuel retailers were cheating consumers by purchasing motor fuel at wholesale under a pricing system that compensated for temperature variations, and then selling that fuel (after its volume has expanded and without disclosing that fact) to consumers according to a pricing system that did not account for temperature variations.

To help prove their claim, the plaintiffs wanted non-party trade groups and their members to disclose communications regarding their strategy for lobbying against the implementation of automatic temperature compensation ("ATC"), which would have addressed the apparent disparity.   The trade groups argued that the associational privilege protected such communications.   The district court, however, disagreed.

In ordering the material disclosed, the district court made three important rulings:  (1) the proponent of the associational privilege has the initial burden to make a prima facie showing of an infringement on his First Amendment right, *id.* at 488; (2) in order to make the required prima facie showing, the proponent of the privilege must, "through objective and articulable facts[,] make an evidentiary showing of a reasonable probability of chill on an association right;" *id.* at 489; and (3) the trade groups had failed to make their prima facie showing that disclosure would chill any right to association, *id.* at 490.

The Tenth Circuit determined that the potential disclosure involved questions of substantial importance, and because the trade groups had no other method of meaningful review, the court analyzed whether to issue a writ of mandamus overturning the discovery order that compelled disclosure of the communications.   *Id.* at 476–77.   As is particularly relevant, the court held:

> [The associational] privilege at issue in this case generally ensures privacy in association when ***exposure of that association will make it less likely that association will occur in the future***, or when ***exposure will make it more difficult for members of an association to foster their beliefs***. These are the "chilling effects," or consequences of disclosure, that the associational privilege seeks to avoid.  But the appellants in this case fail to explain how their main contention on this point—that the information sought as part of this litigation will give the plaintiffs an unfair advantage in the policy debate over the implementation of ATC—will hinder their associational rights (e.g., lobbying efforts, ability to communicate among themselves regarding legislative policy, or

21

maintenance of members within the trade associations).  Instead, the appellants appear simply to argue that a chill can be "inferred" in this case without describing how the disclosure of information would degrade their ability to associate.  Furthermore, the appellants *do not cite any case which supports their assertion that "making . . . political opponents privy to . . . internal strategies" is "alone" sufficient to demonstrate a chilling effect on their First Amendment rights*.

. . . .

[W]e . . . h[o]ld that a party claiming a First Amendment chilling affect meets its [initial] burden by submitting, for example, affidavits which describe harassment and intimidation of a group's known members, and the resulting reluctance of people sympathetic to the goals of the group to associate with it for fear of reprisals.

*Id.* at 489–90, 491 (emphases added) (citations, alterations, and quotation marks omitted); *see also Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989) ("Absent a more specific explanation of the consequences of compliance with discovery, [such as alleging that access to documents would discourage potential members from joining the organization for fear of government retaliation], defendants failed to make the required initial showing of potential First Amendment infringement.").

A case from the United States Bankruptcy Court for the District of Massachusetts is also illustrative.  *See In re The Bible Speaks*, 69 B.R. 643 (Bankr. D. Mass. 1987).  There, a claimant to a bankruptcy estate alleged that the debtor-church had obtained $6.5 million dollars from her by fraud and undue influence.  To try to prove her claim, she propounded discovery requests on the debtor-church that included some questions related to church doctrine.  *Id.* at 643–44.  The debtor-church argued, *inter alia*, that the information sought was protected by a First Amendment associational privilege.  *Id.* at 646.  The court disagreed.  *Id.* at 648.  It found that the debtor-church had failed to show that responding to the discovery requests would chill its

members' freedom to exercise their religion or would chill any association with the church. *Id.* After all, the church held regular public sermons and radio and television broadcasts on church doctrine. *Id.* Having found that the debtor-church failed to meet its initial burden to make a prima facie showing of impingement on its associational right, the court ordered the debtor-church to respond to the claimant's discovery requests. *Id.*

     i.  <u>Mr. Corwin's responses are not protected by the qualified associational privilege.</u>

In this case, Mr. Corwin makes only conclusory allegations that producing the materials sought by Plaintiffs would have a chilling effect on the right to associate with newspersons and with other members of ISPAC, in particular. [Doc. 449] at 8–9. He explains that his "communications with third party journalists [were] for the purpose of advancing political speech about the Martinez administration[.]" *Id.* at 9. Thus, he is adamant that requiring him to "disclose the details of his association with members of his media group [ISPAC] and with other reporters and journalists will have a chilling effect on, and will infringe upon, *his* exercise of fundamental First Amendment rights." *Id.* (emphasis added).

For several reasons, the Court finds that Defendant Corwin fails to meet his initial burden to make a prima facie showing of impingement on his First Amendment right to associate. First, Defendant Corwin has failed to produce any evidence whatsoever to support his conclusory allegation that disclosure would chill his (or anyone else's) right to associate. He did not even submit an affidavit on his own behalf. The Court has only the argument of counsel, which is not evidence.

Second, notwithstanding the lack of evidence, Defendant Corwin's allegations are woefully inadequate. The associations that he fears would be chilled are with newspersons in

23

general and with ISPAC.  *See* [Doc. 449] at 8–9.  However, he alleges nothing more specific

than that.  He does not allege that disclosing the information would dampen his (or anyone

else's) appetite for associating with newspersons or with ISPAC.  He does not allege that if the

information is produced, he (or anyone else) would be known as a member of any group and,

thus, subject to "harassment and intimidation . . . resulting [in] reluctance of people sympathetic

to the goals of the group to associate with it for fear of reprisals."  *NAACP*, 357 U.S. at 462.

The record in this case not only fails to even suggest that Defendant Corwin (or anyone

else) would be discouraged from associating with others who want to expose public corruption,

but—and this is important—the record suggests the opposite.  All indications are that Defendant

Corwin has no problem with being associated *publicly* with critics of government officials

(especially Governor Martinez and her administration).  In fact, he appears to relish in it.  In his

own words:

> Mr. Corwin is, inter alia, an investigator, journalist, and political blogger.
> He is the executive director of, and also an investigator and writer for,
> Independent Source PAC (ISPAC), an organization that investigates and exposes
> the activities of political candidates, office holders, and interest groups on its
> website, http://www.independentsourcepac.org/index.html, and through printed
> newsletters.  ISPAC's mission is to disseminate source material for its news
> bulletins and editorials by publicizing those documents, video, and audio.  The
> stated goal of ISPAC is to hold politicians and office holders accountable to
> everyone, not just special interests.  Although ISPAC operates as an independent
> entity, and is definitely a political organization, it does not coordinate with any
> campaign, candidate, or party.  ***ISPAC has, and continues, to expose corruption
> in the Administration of Governor Susana Martinez, in particular, corruption
> related to the Public Education Department (PED) and the Downs racetrack.***
>
> . . . .
>
> Some of the emails intercepted by Mr. Estrada were published by ISPAC and
> provided by Mr. Corwin to the media, and to law enforcement, as part of ***ISPAC's
> mission to expose potential public corruption or other wrongdoing by those in
> office***. . . .

>    ***Mr. Corwin's publishing of the emails, and provision of the emails to the AG, were in no way extraordinary.  Mr. Corwin has been reporting potential criminal conduct on the part of Governor Martinez, members of her administration, as well as others, since November of 2011*** to the public and to law enforcement. To that end, Mr. Corwin received a lot of tips and source documents from a variety of sources and had a tip line on the ISPAC website just for that purpose. Mr. Corwin and ISPAC exposed several actions involving wrongdoing because of information received from the tip line and other sources. The emails at issue here were part of those investigations.

Defendant Corwin's Motion to Dismiss [Doc. 30] at 1–2, 4 (emphasis added).

The "headline banner" on the homepage of the ISPAC website (in the largest font on the page and with a red background) reads:

>    Susana Martinez's image is carefully scripted.  It is also false.  Her key advisor, Jay McClesky, has turned the local media into her PR team.  But, facts are stubborn things.  They eventually come out.  Here, fully documented and sourced, in one easy[-]to[-]use website, is the truth of her corruption, her destruction of public education, her operation of a shadow government, her governing by intimidation, her implementation of policies bad for New Mexicans, and her protection of the ethically challenged and abusive[-]to[-]women "bad boys" who run her administration.

www.independentsourcepac.org (last visited May 5, 2016) (of which the Court takes judicial notice pursuant to Fed. R. Evid. 201(b)).  Furthermore, the bottom of ISPAC's homepage reads "Disclaimer Paid for by Michael Corwin."  *Id.*

Defendant Corwin's political views are public.  Indeed, he doggedly promotes them in the public sphere, as is surely his right.  Nothing suggests that he is trying to keep his views or his associations (with others who share his views) private.  Nor is there any suggestion that failure to keep such associations private would discourage anyone from joining in his criticisms

of government officials.[11]  Having failed to make the required initial showing of potential First Amendment infringement, the Court finds that the qualified associational privilege does not apply here.  Corwin's objection based on the associational privilege is overruled.[12]

    ii.    <u>Mr. Wetherbee's responses are not protected by the qualified associational privilege.</u>

Defendant Wetherbee has not been at all clear as to whether he asserts a qualified associational privilege.  *Compare* [Doc. 450] at 7 ("Wetherbee's claims are not associational— they are directly related to his being a reporter and receiving information from sources [who have provided information on alleged government corruption]."), *with id.* at 9 ("Wetherbee also asserts his objections to production of communications with journalists and other members of the press regarding the @susana2010.com emails because the right to associate with members of the press and communications with the press are protected by the First Amendment. See, e.g., Silkwood v. Kerr–McGee Corp., [sic] 563 F.2d 433, 437 (10th Cir. 1977).").

To the extent that Defendant Wetherbee is attempting to claim a qualified associational privilege, he fails to meet his initial burden to make a prima facie showing of impingement on his First Amendment right to associate.  First, he does not even allege—much less show—that disclosure of his communications with other journalists will chill the freedom to associate.  The *entirety* of his argument is that "[under Silkwood,] the right to associate with members of the

---

[11] In November of 2014, in his Motion to Dismiss, Defendant Corwin alleged that "[a]s a result of his political speech, supporters of the Martinez Administration have engaged in a pattern of retaliatory actions against [him]. The instant lawsuit is an epitome of such retaliation."  [Doc. 30] at 4.  First, this allegation is not repeated in his Response.  Second, an allegation of retaliation does not suggest that Defendant Corwin's ability or desire to associate with others critical of the Martinez administration has been or would be chilled, if he is required to respond to Plaintiffs' discovery requests.  In short, this conclusory allegation does not change the outcome of the instant discovery dispute.

[12] It appears that Defendant Corwin would prefer to keep his and his associates' internal strategies private from his political opponents.  The Court finds that this reason (especially under the circumstances in this case) is not sufficient to protect him from Plaintiffs' discovery requests.  *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d at 489–90.

press and communications with the press are protected by the First Amendment."  [Doc. 450] at 9.  Even if this lone statement could be interpreted as alleging a chill, which it cannot, he still fails to meet his burden to make an initial evidentiary showing of a reasonable probability of chill on an association right.

Furthermore, the record in this case wholly fails to even *suggest* that Defendant Wetherbee (or anyone else) would be discouraged from associating with others who want to expose public corruption, if he is compelled to respond to Plaintiffs' discovery requests.  In fact, the record shows that Wetherbee is committed to investigating and *publicly* airing what he sees as government corruption no matter what.

Even in this case, Wetherbee misses no opportunity to lambaste Martinez and her administration.  The record is replete such criticisms.  *See, e.g.,* Wetherbee's Motion to Dismiss [Doc. 62] at 2; Wetherbee's Discovery Responses [Doc. 438-1] at 3 (alleging that the Governor threatened others in an intoxicated attempt to "cover up inappropriate behavior at a disruptive party").  Certainly, the Constitution protects Wetherbee's right to agitate.  But under the complicated circumstances here, it does not protect his communications with the press from discovery.

There is simply no indication that compelling the discovery will chill any association.  As with Corwin, nothing suggests that Wetherbee wants to keep his views or his associations (with others who share his views) private.  Nor is there any suggestion that failure to keep such associations private would discourage anyone from joining in his criticisms of government officials.  Having failed to make the required initial showing of potential First Amendment infringement, the Court finds that the qualified associational privilege does not apply here.

Wetherbee's objection based on the associational privilege—to the extent that he even makes one—is overruled.

### III. Wetherbee's remaining objections to Plaintiffs' discovery requests are overruled.

The Court has carefully and thoroughly considered Defendant Wetherbee's filings and arguments on this matter. He proceeds pro se, and the Court has liberally construed his submissions. All of Wetherbee's objections are overruled, except his objection to revealing the identity of his confidential source(s). Nevertheless, he has no entitlement to protect as a confidential source anyone who has already been exposed, namely his fellow Defendants in this case (including Anissa Ford and Jason Loera), nor may he protect Laura Levin as a confidential source. This qualified privilege does not extend to Wetherbee's communications with other reporters (including Corwin and Levin).

### IV. Reasonable Expenses under Fed. R. Civ. P. 37

The Court will grant Plaintiffs' Motion to Compel Corwin in its entirely. Defendant Corwin's positions in resisting the discovery were not substantially justified. Thus, pursuant to Rule 37(a)(5)(A), he must pay Plaintiffs' reasonable expenses, including attorney fees, incurred in making the motion.

Defendant Wetherbee will prevail on one ground. However, his other objections to Plaintiffs' discovery requests were groundless. Accordingly, pursuant to Rule 37(a)(5)(C), he must pay Plaintiffs' reasonable expenses, including attorney fees, incurred in making the motion.

Plaintiffs have been ordered to submit their affidavits of expenses and fees incurred in making the motions no later than May 20, 2016. On submission of such affidavits, Defendants

Corwin and Wetherbee will each have **seven calendar days** to object to the reasonableness of the amount of the expenses claimed.  No "replies" will be permitted.

<u>Conclusion</u>

On balance, the Court finds that Plaintiffs' discovery requests are not a fishing expedition.  They go directly to Plaintiffs' claims for statutory and punitive damages and to Defendants' defenses.  Corwin's and Wetherbee's editorial process is not protected by the qualified associational privilege or the qualified newsperson's privilege.  However, Defendant Wetherbee may continue to protect his remaining confidential sources, subject to the limitations described herein.

Defendants Corwin and Wetherbee are hereby ORDERED to provide the following responses to Plaintiffs' Discovery Requests:

| Request No. | Defendant Corwin's Required Action |
|:---:|:---|
| **RFP 6** | Respond fully |
| **RFP 7** | Respond fully |
| **RFP 8** | Respond fully |
| **RFP 9** | Respond fully |
| **Rog 8** | Respond fully |
| **Rog 9** | Respond fully |

Defendant Corwin must fully respond by **June 3, 2016**. To the extent that he asserts that any of the communications responsive to the RFPs or Interrogatories is protected by the attorney-client privilege, he must provide a proper privilege log[13] that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5.

---

[13] The privilege log need not identify communications between Corwin and his attorneys arising from their representation of him in this lawsuit.

| Request No. | Defendant Wetherbee's Required Action |
|---|---|
| **Rog 1** | Respond fully |
| **Rog 2** | Respond fully |
| **Rog 3** | Respond fully |
| **Rog 4** | Respond fully |
| **Rog 5** | Respond fully |
| **Rog 6** | Respond fully |
| **Rog 7** | Respond fully |
| **Rog 8** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled. Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **Rog 9** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled. Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **Rog 13** | Respond fully |
| **Rog 14** | Respond fully |
| **RFP 1** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled. Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFP 2** | Respond fully |
| **RFP 6** | Respond fully |
| **RFP 7** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled. Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFP 8** | Respond fully |

| | |
|---|---|
| **RFP 9** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFP 10** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFP 11** | Respond fully |
| **RFP 12** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFP 13** | Respond fully |
| **RFP 14** | Respond fully |
| **RFP 15** | Respond fully |
| **RFP 16** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **RFA 3** | Respond fully |
| **RFA 4** | Respond fully |
| **RFA 6** | Respond fully |
| **RFA 6** | Respond fully |
| **RFA 7** | Respond fully |
| **RFA 8** | Respond fully |

| | |
|---|---|
| **2d RFA 19** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |
| **2d Rog 17** | Wetherbee's objections are sustained *only* to the extent that Wetherbee is attempting to protect a confidential source other than his co-Defendants or Levin. Otherwise, his objections are overruled.  Wetherbee must respond fully, or for information that reveals the identify of a confidential source, he must produce a proper privilege log that complies with the requirements set forth in *United States v. Community Health Systems*, No. 05-cv-0279 WJ/ACT, 2012 WL 12342816 (D.N.M. May 16, 2012), at *5. |

Defendant Wetherbee must serve his responses no later than **June 3, 2016**.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion to Compel Defendant Corwin to Respond without Objection to Plaintiffs' First Set of Interrogatories and Requests for Production [Doc. 435] is **GRANTED**.  Defendant Corwin must fully respond by **June 3, 2016.**

**IT IS FURTHER ORDERED** that Defendant Corwin pay Plaintiffs' reasonable expenses incurred in making the motion pursuant to Fed. R. Civ. P. 37.  He has **seven calendar days** from the date that Plaintiffs file their affidavit of reasonable expenses to object to the reasonableness of the amount claimed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Defendant Bruce Wetherbee to Respond without Objection to Plaintiffs' First Set and Second Sets of Interrogatories, First and Second Sets of Requests for Production, and First Set of Requests for

Admissions Propounded by Plaintiffs [Doc. 438] is **GRANTED IN PART and DENIED IN PART**.  Defendant Wetherbee must tender his responses no later than **June 3, 2016**.

**IT IS FURTHER ORDERED** that Defendant Wetherbee pay Plaintiffs' reasonable expenses incurred in making the motion pursuant to Fed. R. Civ. P. 37.  He has **seven calendar days** from the date that Plaintiffs file their affidavit of reasonable expenses to object to the reasonableness of the amount claimed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**