**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

CRYSTAL AMAYA, BRAD CATES,
BRIAN MOORE, and KIM RONQUILLO,

Plaintiffs,

v. No. 14-cv-0599 WJ/SMV

SAM BREGMAN, MICHAEL CORWIN,
JAMIE ESTRADA, ANISSA GALASSINI-FORD,
JASON LOERA, and BRUCE WETHERBEE,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL OF DEFENDANT FORD**

THIS MATTER comes before the Court and following oral argument upon Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 54(b) to Reconsider the Order Dismissing Anissa Galissini-Ford as a Defendant (Doc. 98), to Vacate the Dismissal Order as to Ms. Ford, and to Reinstate and Rejoin Ms. Ford as a Party Defendant in this Case, filed on March 22, 2016 (**Doc. 415)**. After reviewing the parties' briefs and applicable law, the Court issued an oral ruling granting Defendant's motion at the hearing for the reasons described in this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiffs in this case allege that Defendants illegally and surreptitiously hijacked and intercepted their private and confidential e-mail communications. On March 23, 2015, the Court dismissed all claims against Defendant Anissa Galassini-Ford ("Ms. Ford"). Doc. 98 ("March 23rd Order"). In 2010, Ms. Ford served as personal assistant to Susana Martinez during

the gubernatorial campaign. In the March 23rd Order, the Court found that Plaintiffs' blanket assertion that their emails "were intentionally and willfully disclosed and used amongst the Defendants" could not be "deemed facially plausible as to Ford without 'factual content that allows the court to draw the reasonable inference that [Ford] is liable for the misconduct alleged.'" Doc. 98 at 16.

Plaintiffs now move for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure, which provides for a Judgment on Multiple Claims or Involving Multiple Parties.

**DISCUSSION**

**I. Legal Standards**

A. Motion to Reconsider

The Court may reconsider its dismissal of Ms. Ford as an interlocutory order under Rule 54. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. 2004) (district courts have authority under common law and Rule 54(b) to reconsider interlocutory orders); *Warren v. American Bankers Insurance of Florida*, 507 F.3d 1239, 1243 (10th Cir. 2007) ("[A] district court always has the inherent power to reconsider its interlocutory rulings" and the Tenth Circuit "encourage[s] a court to do so where error is apparent.").

Reconsideration of an order in federal court is inappropriate to reargue an issue or advance new arguments or supporting facts which were available at the time of the original motion. *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration must be based on any of the three familiar grounds, which are: (1) if a manifest error of law or fact has been committed by the court; 2) if new evidence has been discovered; and 3) if there has been an intervening change in controlling law. *Servants of the Paraclete, Inc. v. Great American Ins*., 866 F.Supp. 1560, 1581 (D.N.M. 1994); *Rodriguez,* 89 Fed.App. at 959. The

decision whether to grant a motion to reconsider is committed to the sound discretion of the court. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1514-15 (10th Cir. 1995).

B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id*. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

**II. Plaintiffs' "New Evidence"**

The misconduct alleged in this case is the intentional use, or attempt to use, the contents of any wire, oral or electronic communication where the person using the information has reason to know it was obtained through interception of that communication. 18 U.S.C. §2511(c)-(d) ("ECPA" or Electronic Communications Privacy Act of 1986, 18 U.S.C. §2510 et seq). Count Two of the Amended Complaint (Doc. 22) asserts a claim against all Defendants for "Disclosure and/or Use of 18 USC §§2511(1)(c) & (d). The Amended Complaint also alleges that Defendants Estrada, Ford and Loera knew each other and communicated on a regular basis; that

Estrada shared Plaintiffs' private and confidential emails and hundreds of other stolen emails to Ms. Ford, among others; and that Ford had an email account which contained emails that were intended for Plaintiffs. Doc. 22, ¶¶47-53. In paragraph 79 of the amended complaint, Plaintiffs state that:

> Defendants Loera, Bregman, Corwin, Wetherbee, and Galassini-Ford **intentionally disclosed and/or used** Plaintiffs' stolen electronic communications."

Doc. 22, ¶79 (emphasis added).

Plaintiffs claim that since the dismissal Order was entered as to Ms. Ford ("dismissal order"), they have obtained information and documents recently produced by defendants Jason Loera and Jamie Estrada.[1] Ms. Ford ("Defendant" for purposes of this Order) contends that all of this evidence has been available to Plaintiffs and cannot form the basis for her reinstatement in this lawsuit. The Court disagrees with Defendant because the evidence described in the motion by Plaintiffs as "new evidence" was not available prior to the Court's dismissal of Ms. Ford in March of 2015. Mr. Loera's Declaration was made seven months after the Court dismissed Ms. Ford (Doc. 98); *see also* Doc. 415-8, Loera Decl., dated Jan. 9, 2016; and Doc. 415-5, Loera Decl., dated Oct. 28, 2015. Similarly, although Mr. Estrada initially attempted to limit Ms. Ford's exposure to liability during his criminal proceeding, his recently amended discovery responses produced on April 13 and 15, 2016, provide new insight into Ms. Ford's role in the interception, use or disclosure of the stolen emails. *See* Doc. 453-2.

Plaintiffs contend that this material shows the level of Ms. Ford's involvement which was previously withheld or concealed in her responses to Plaintiffs' subpoena duces tecum. *See*

[1] Mr. Loera was a Democratic consultant who received fees from the political committee called Grassroots New Mexico. He was indicted for possession of child pornography after the FBI searched his home related to the criminal investigation of the stolen emails. *See U.S.A. v. Loera*, 13cr01876 JB

Docs. 298, 301. While Ford produced 36 emails that were contained on her computer, she failed to include certain emails that belie her self-proclaimed lack of knowledge or illegality. However, the evidence recently provided by Estrada and Loera indicates that it is plausible that Ford was actively involved in communications between Loera, Estrada and Bregman and that Ms. Ford had very early knowledge of the mechanism used by Estrada to intercept the emails. According to the Government's Sentencing Memorandum in *U.S. v. Estrada*, Crim. No. 13-01877, Doc. 95, Estrada referenced a sole unnamed individual to whom he had confided about his idea of taking over the Susana2010 domain, *before* he actually did so and that this confidence continued from July 2011 to June 2012. Doc. 415-1 at 6. The new evidence clarifies that Ms. Ford was Estrada's confidante and that Ford was the only person who knew that Estrada had taken control of the Susana2010 email domain. Doc. 453-2 at 7. In Loera's recently produced discovery responses, Loera stated that Ford was able to describe to Loera in detail how Estrada repurchased the expired Susana2010 domain using a fictitious name and a "throw away credit card." Doc. 415-6 at 2.

The new evidence indicates that Ford was the person who sent the "first damaging internal email that kicked off emailgate" which was dated as early as May 2nd, 2012. *Id.*; *see also* Doc. 415-8 (Loera Decl., dated 1/9/16, describing documents produced). Ms. Ford introduced Defendant Bregman to Estrada in June of 2012, and told Loera in an email that she was working on "convincing" Estrada to disclose the emails. Doc. 415-3 at 2. Based on this evidence, it is plausible that Ms. Ford had knowledge of the illegal mechanism Estrada was intending to use to intercept Susana2010 domain and that she did more than just receive a few stolen emails and store them in the memory of her computer. Other new evidence that was not available before the dismissal Order of Ms. Ford is listed as follows:

- From Loera's October 28, 2015 Declaration (Doc. 415-5):

  - Ms. Ford knew or provides a basis for a reasonable inference that she knew about Mr. Estrada's interception of the stolen emails from the @susana2010 domain. At a meeting at Wecks which included Bregman, Loera and Ford, Ms. Ford told them that an "associate" of hers was in possession of "a ton of emails from a domain used by Governor Martinez and her staff . . . ." Ford was asked to bring that "associate" [Estrada] with her to a follow-up meeting;

  - Bregman introduced Loera to Ms. Ford so that Ms. Ford could facilitate and convince Estrada to illegally use and disclose the illegally intercepted emails;

  - A few days after the FBI's raid on Estrada's home in September 2012, Estrada and Ford met with Loera. Estrada told Loera that he "twice wiped his computer clean" and Ms. Ford told him that "she buried her hard drives in her back yard";

  - Ms. Ford sent an email to Bregman and Loera forwarding stolen email concerning a request for addresses of teachers. *See also* Exs, 4 (the email).

- Texts between Mr. Loera and Ms. Ford, June & July 2012 (Doc. 415 at 3):

  - Ford to Loera dated June 15, 2012: "Bhahhahahahahahah!!!! Love it! Haven't seen journal yet"

  - Ford to Loera: "Got Jamie convinced. Have good stuff for u today. Will talk after we are done with Laura";

  - Loera to Ford: "I think Jamie should give me the pw [password] ASAP. So I can dl [download]. Go daddy may wipe it.";

  - Ford to Loera: "Jamie wanting to hold off on emails again. He is wiggin' again. Call when you can";

  - Ford to Loera: "Ask Sam if he knows a cyber crime attorney. I want to talk to one with Sam. If we r protected then I might want to come out.";

  - Loera to Ford: "Understood. Meeting Sam tomorrow";

  - Ford to Loera: "I'm sick of this! If we come out and say yes we did it and shame in the media for pursuing us and now u need to get to the root of the problem!";

  - Loera to Ford: "I'm pissed as well. These journalists are whores. We need to meet tomorrow and strategize";

  - Ford to Loera: "Ok. Let me know."

- Exchanges between Ford and Loera (Doc. 415-3, dated September 1, 2012):

- Ford to Loera: "We r going to take this bitch down! I fucking hate her!";
- Loera to Ford: "Enjoy your weekend knowing that next week will be the biggest political scandal in the history of NM. It's a long way down for SM. It will be stretching her spanks to the limit";
- Ford to Loera: "Hahahha!!! So glad to have met u guys!! It's gonna be. Great ride!;
- Loera to Ford: "Must say with you and JE [Jamie Estrada] we make a great team and thats [sic] half the battle";
- Ford to Loera: "Aww. Thanks. Proud to be a part of it!";
- Ford to Loera: "And I can't fucking wait till Tuesday! Hahaha."

## III. Analysis

Defendant acknowledges that Ford's comments in her texts and responses are embarrassing, full of rancor and not to be condoned, but maintains that none of this new evidence shows that Ford directly intercepted, used or disclosed any email sent to or by any of the Plaintiffs in this lawsuit in violation of the ECPA. Defendant notes that the email correspondence between Bregman and Loera (Doc. 415-4) and the texts between Ford and Loera were not authored by or sent to, any of the Plaintiffs and that therefore these new facts do not add enough substance to the complaint to state a claim against Ms. Ford. However, under the *Iqbal/Twombly* standard, Plaintiffs do not need to prove anything at this point. They only need to set forth facts necessary to "nudge [his] claims across the line from conceivable to plausible" in order to successfully withstand a motion to dismiss, and they have done this. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570)).

### A. Reconsideration Based on New Evidence

Plaintiffs further contend that they have alleged sufficient facts to support a viable claim under 18 U.S.C. §2520, even if potential liability is limited to actual use or disclosure, without including "endeavor" conduct that is prohibited in 18 U.S.C. §2511(1)(c) and (d). The Court

recently granted Defendant Bregman's motion to dismiss Count II in the amended complaint, concluding that "endeavor" conduct is not a basis for civil liability under the ECPA. See Doc. 479. However, Plaintiffs have succeeded in alleging a plausible claim under 18 U.S.C. §2520 against Ms. Ford, even eliminating "endeavor" conduct as a basis for civil liability. The amended complaint already alleges that Defendant Estrada sent Ms. Ford stolen emails; that he and Ms. Ford and others were in frequent communication with each other. The new evidence supports Plaintiffs' allegations that Ms. Ford participated in the political scheming and maneuvering that occurred in connection with the interception of emails stolen from the @susana2010 domain, which is the subject of this lawsuit. In light of this new evidence, it is therefore plausible that she used or disclosed these mails herself and that some of these emails were sent by or to Plaintiffs.

Ms. Ford's role in this situation is alleged to be far from passive. The amended complaint alleges that Defendant Estrada disclosed private and confidential email messages intended for Plaintiffs to Defendants Loera and Ford. The recently disclosed evidence underscores the fact that Ms. Ford disliked the Governor intensely; allows a plausible motive for Ford's alleged conduct in goading Mr. Estrada to engage in illegal conduct; and allows a reasonable inference that Ford herself believed she may have engaged in unlawful conduct when she made inquiries about contacting a cyber crime attorney.

Ms. Ford makes the somewhat incredible statement that Plaintiffs allege knowledge, intention, reasonable inferences and endeavor, "but never allege that [Ms. Ford] actually violated the Act." Doc. 431 at 13 (emphasis added). This statement is contradicted by specific allegations in Count Two of the amended complaint:

> 79. Defendants Loera, Bregman, Corwin, Wetherbee, and Galassini-Ford **intentionally disclosed and/or used** Plaintiffs' stolen electronic communications."
>
> 80. Based on the communications between and among the various Defendants and the actions of the various Defendants, as described herein, and the contents, format, and sheer volume of the emails intercepted, Defendants Loera, Bregman, Corwin, Wetherbee and Galassini-Ford **knew, should have known, or had reason to know that any electronic communications that they received from any of the other Defendants, were obtained through the wrongful and illegal interception of electronic communications.**

Doc. 22, ¶¶79 and 80 (emphasis added).

The Court is also not oblivious to Ms. Ford's reluctance to provide Plaintiffs with requested discovery responses—a reluctance which appears to be shared by the other Defendants in this case, judging from the motions to compel and objections to discovery requests filed in this case. Discovery began in July 2015 (Docs. 148, 150). Since then, Ms. Ford has attempted to withhold production of documents related to the FBI's investigation of her on the basis of confidentiality and privilege, an attempt rejected by United States Magistrate Judge Stephan M. Vidmar, the magistrate judge assigned to this case. *See* Doc. 384. Ms. Ford also failed to produce emails and text messages produced by Loera and Estrada. Instead, in a request for production asking her to produce texts, emails and voice mails describing her efforts to convince Estrada or others to disseminate stolen emails, she answered that she "made no efforts to convince Jamie Estrada or others to disseminate stolen emails and accordingly has no documents responsive to this request." Doc. 298 at 6; *see* Doc. 453 (reply) at 12. As the Court has discussed above, the new evidence suggests that this response by Ms. Ford may not be true. For all of these reasons, the new evidence constitutes a basis for Ms. Ford's reinstatement as a named Defendant in this lawsuit.

B. Reconsideration Based on Error of Law

Plaintiffs' motion to reconsider is based on the "new evidence" factor, although the Court finds that the motion would have some merit even if it were based on an error of law made by the Court. In taking a step back, the Court finds that the dismissal of Ms. Ford may have been a bit hasty and premature in light of the applicable standard under *Iqbal/Twombly* standard. Plaintiffs will eventually be required to *prove* interception, disclosure or intentional use in order to find Ms. Ford liable under §2520. Mere knowledge of any interception, use or disclosure of Plaintiffs' emails will not be sufficient.

As the Court previously stated, the fact that discovery has thus far unearthed no evidence of actual use, interception or disclosure by Ms. Ford regarding Plaintiffs' stolen emails is not dispositive under the relevant legal standard that governs at this stage in the litigation. It may be that such evidence does exist and will be unearthed as discovery progresses, despite Ms. Ford's selective discovery production (as evidenced by her equivocal responses to the subpoena duces tecum and the statement to Loera that she buried her computer hard drive in her back yard). On the other hand, it may be that evidence of Ms. Ford's direct participation in interception, use or disclosure of Plaintiffs' emails does not exist and/or never comes to light, and this scenario could support a motion for summary judgment by Ms. Ford for her dismissal from the case. On a Rule 12(b)(6) motion, the Court has to determine only whether the facts, assuming them to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Plaintiffs should be given a chance to try and obtain this discovery, if it does exist. For the time being, however, Plaintiffs' amended complaint has sufficiently alleged more than knowledge on Ms. Ford's part, and for this reason, Ms. Ford should also be reinstated based on an error of law made by the Court.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 54(b) to Reconsider the Order Dismissing Anissa Galissini-Ford as a Defendant (Doc. 98), to Vacate the Dismissal Order as to Ms. Ford, and to Reinstate and Rejoin Ms. Ford as a Party Defendant in this Case (**Doc. 415)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

UNITED STATES DISTRICT JUDGE